Argued December 16, 1974, affirmed January 20, 1975

# HOUSE (No. 3657), *Appellant, v.* STATE ACCIDENT INSURANCE FUND, *Respondent.*

530 P2d 872

*James D. Huegli,* Portland, argued the cause for appellant. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*Janet A. Metcalf,* Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Frank B. House, claimant herein, was a 41-year-old heavy equipment operator employed by Frank G.

Baulne, Inc., when he injured his back in an on-the-job accident in 1966. On September 30, 1966, the State Compensation Department (now the State Accident Insurance Fund) denied his workman's compensation claim. Subsequently, a referee of the Workmen's Compensation Board Hearings Division remanded the claim to the department and ordered its acceptance. Pursuant thereto, the department issued a second determination order awarding claimant 25 per cent of the maximum available for unscheduled low back disability. On appeal to a referee, claimant was granted permanent total disability status. The Workmen's Compensation Board subsequently reduced this award to 50 per cent of the maximum available for unscheduled low back disability. On appeal to the circuit court, the award was again revised, this time to 75 per cent of such maximum. The case comes before us on claimant's contention that he is entitled to a permanent, total disability rating.

Claimant's medical history prior to the accident herein includes a long-term problem with a bizarre form of seizure, characterized by a sudden feeling that the head is exploding and an uncontrollable flailing of the arms and legs. These seizures have been diagnosed as hysterical rather than epileptic in nature. Nevertheless, medication prevents the attacks.

Claimant suffered his first lower back injury in 1963 when a large rock fell on the cab of the truck he was driving, causing the vehicle to bounce two feet off the ground. While he was able to return to work within three to four weeks, lower back and left leg pains continued to trouble him. As a result, he was thereafter forced to miss work occasionally.

Mr. House's injury which is the subject of this claim occurred on May 12, 1966, while he was lifting a heavy spare tire into the back of a pickup truck. Severe pains in his lower back and left leg resulted. He consulted a chiropractor who, four days after the injury, allowed him to return to work with the restriction that he was to do no heavy lifting.

For the next two years, claimant worked off and on as a truck driver to the extent his condition allowed. He testified that he could only tolerate driving trucks with a sufficiently soft ride. He received no treatment during this period, except for chiropractic therapy which was completed in August 1966. Finally, in 1968, claimant was forced to give up his job when faced with the assignment of driving a truck with an uncomfortable ride. There is no evidence in the record that he has held a regular paying job since.

Beginning in 1968, claimant underwent a series of physical and psychological examinations and attempts at rehabilitation. In April 1968, orthopedic examinations were conducted by Dr. Howard E. Johnson of Pendleton. Dr. Johnson evaluated claimant as "a healthy appearing man in no acute distress." The results of the physical examination were essentially normal, except for a weak Achilles response. X-rays revealed some abnormalities: slight irregularity involving the anterior superior border of L4; localized arthritic lipping involving the anterior superior border of L4; minimal narrowing of the disc space between L5-S1; pseudo-sacrilization of the left 5th transverse process with some schlerosis at the pseudo articulation and left sacroiliac joint; and arteriosclerosis involving the abdominal aorta. However, there was "essentially no change" when compared with X-rays taken in 1963,

with the exception of increased calcification in the abdominal aorta. Dr. Johnson concluded that claimant was "well enough that further treatment would not be indicated," and recommended vocational rehabilitation toward a line of work more compatible with his back condition. After a subsequent examination in December 1968 revealed a total absence of Achilles response (although no other significant changes), Dr. Johnson recommended further diagnostic procedures.

During early 1969, an electromyogram, pantopaque myleogram, and conduction velocity studies were performed on claimant. All proved negative, and the possibility of a herniated intervertebral disc lesion was ruled out. On May 5, 1969, Dr. Robert Dow, a neurologist, stated that claimant's condition was medically stationary.

On May 3, 1971, Dr. Herman A. Dickel performed a psychiatric examination of claimant. Dr. Dickel diagnosed him as "profoundly, though not psychotically, depressed." He was found to have "a long history of insecurity and immaturity, with a proneness to develop symptoms under stress." The condition was considered to be non-permanent but requiring a carefully administered combination of treatment and retraining in order for recovery to take place. Dr. Dickel interpreted tests as "pretty much rule [sic—ruling] out any 'malingering' or 'voluntary choice of symptoms' * * *."

On January 31, 1972, the State Accident Insurance Fund referred claimant to the Disability Prevention Division for vocational rehabilitation plus psychiatric care. The Division diagnosed his physical condition as chronic lumbrosacral strain. Dr. Norman W. Hickman, a clinical psychologist, evaluated him as suffer-

ing from "a moderately severe anxiety tension reaction with probable conversion symptoms and depression." He was further characterized as a somewhat immature and unstable person with strong feelings of fear and inadequacy.

Claimant's initial enrollment period at the Disability Prevention Division was unsuccessful, and he was discharged in April 1972. Psychological counseling continued, however, through the remainder of the year. On December 4, 1972, Dr. Hickman reported claimant as "thoroughly cooperative * * * [h]is level of self-confidence has consistently improved to the point * * * [where he] has made some positive steps to apply for a job."

The improvement, however, proved to be short-lived. In January 1973, Dr. Dickel characterized claimant as a man who "probably has little desire, or motivation, to further correct his condition." During the same period, Mr. Darrell Klampe, a vocational rehabilitation counselor assigned to the case, reported claimant to be a man with "little motivation in finding employment as long as he receives benefits from the state every two weeks * * * I do not feel that Mr. House really wants to work unless the job is right in the town of Moro. We have found several job opportunities for Mr. House but he has come up with an excuse which prevents him from taking the job."

Claimant was reevaluated by the Disability Prevention Division in August 1973. The following recommendation was made with regard to his physical condition:

"* * * * *

"* * * We believe that no surgical treatment is indicated. Physical condition is stationary. The

patient should not return to his former occupation, but could return to some occupation. He should be discharged from the DPD. Total loss of function of the injured part is considered minimal, and loss of function of the injured part due to this injury is also considered minimal.

"* * * * * *"

Claimant's psychological status was described as follows:

"* * * * *

"* * * The psychological evaluation in the personality area reveals a substantial deterioration in this patient's emotional status since he was examined here in 1972. He presently has more symptoms, his anxiety level is higher, he is more depressed, and far more preoccupied with his physical and emotional complaints. * * * The patient presently is experiencing strong feelings of fear and inadequacy, he is feeling quite alienated and isolated, and there are clear indications of incipient psychotic developments although he is not psychotic at the present time. * * * There is certainly reason to believe that some of the patient's symptoms are hysterical in nature * * *.

"* * * The psychological evaluation reveals that this patient is functioning at an average intellectual level with both verbal and nonverbal materials. Although the patient dropped out of school in the 11th grade, he has passed the GED examination. He appears to have the intellectual resources necessary to work in a variety of occupations * * *."

At the December 19, 1973, hearing before the Workmen's Compensation Board Referee, claimant indicated that his back injury seriously impedes his ability to function normally. He stated that he is unable to walk more than three blocks without stopping to rest and cannot stand in a fixed position without moving for more than 15 minutes. He is not certain he could lift

25 pounds, but if he could and did, he would be "very sorry afterwards" because of the pain. He cannot undertake even light shoveling and is unable to wash dishes due to the bending involved.

Claimant recently began operating a small engine repair shop in his hometown of Moro. He works two to four hours a day but does not work every day.

As to his failure to secure a regular job, claimant testified that he is unable to stay on his "feet or bottom" for eight hours a day, and must work at his own pace. Jobs he would be able to perform are thus difficult to find, particularly in Moro. He does not feel that it would be a sound idea to move inasmuch as his home is paid for and his wife would have to give up her teaching job.

"Permanent total disability" is defined as any condition which permanently incapacitates a workman from regularly performing any gainful employment. ORS 656.206 (1) (a); *Swanson v. Westport Lumber Co.,* 4 Or App 417, 479 P2d 1005 (1971). *Kirkendall v. Stamper's J & J Tire,* 18 Or App 56, 523 P2d 1052, Sup Ct *review denied* (1974).

■ Manifestly, claimant has failed to demonstrate any such condition without invoking the aid of the so-called "odd-lot" doctrine. This is a rule which permits a finding of total disability in a situation where claimant is not altogether incapacitated for any kind of work, but he is nonetheless so handicapped that he will not be able to obtain regular employment in any well-known branch of the competitive labor market—absent superhuman efforts, sympathetic friends or employers, a business boom, or temporary good luck. 2 Larson, Workmen's Compensation Law § 57.51;

*Swanson v. Westport Lumber Co.,* supra; *Deaton v. SAIF,* 13 Or App 298, 509 P2d 1215 (1973); *Kirkendall v. Stamper's J & J Tire,* supra.

■ The burden is initially on the employe to prove his odd-lot status. However, once he establishes prima facie that he is an odd-lot case, the burden shifts to the employer to demonstrate that some kind of suitable work is regularly available to claimant. *Deaton v. SAIF,* supra; *Kirkendall v. Stamper's J & J Tire,* supra.

■ Depending on the quality of claimant's evidence, proof of his motivation to find suitable work may or may not be required in order to establish the prima facie case. In *Deaton v. SAIF,* supra, we set forth the determinative test as follows:

> "* * * (1) [M]otivation is not necessary to establish a *prima facie* case of odd-lot status if the medical facts when considered along with other factors, such as age, education, mental capacity and training of themselves support the claimed inability to work, and (2) evidence of motivation to seek and work at gainful employment is necessary to establish a *prima facie* case of odd-lot status if the injuries, even though severe, are not such that the trier of fact can say that regardless of motivation this man is not likely to be able to engage in gainful and suitable employment. The burden of proving odd-lot status rests upon the claimant." 13 Or App at 304-05.

Applying these rules to the facts at bar, we encounter the following profile of claimant: he is a man of average intelligence who is not yet 50 years of age. While he did not complete high school, he has acquired his GED. Moreover, tests reveal him to have a very superior understanding of mechanical and electrical

principles. He has worked as a heavy equipment operator, heavy construction carpenter, truck driver, subassembly inspector for Boeing, and auto parts man. His physical incapacity has been evaluated as minimal, thus permitting his return to some occupation. Psychologically, claimant has serious problems; however, he is not psychotic, and his mental condition has been evaluated as constituting by itself only a 35 per cent disability.

Clearly, claimant's condition is not such that, regardless of motivation, he is unemployable. The burden was therefore on claimant, as part of his prima facie case, to demonstrate his motivation to return to work.

We do not believe claimant has shown such motivation. In a period of six years, he inquired about or applied for a mere handful of jobs. Both Dr. Dickel, the psychiatrist, and Mr. Klampe, the vocational rehabilitation counselor, believe him to be unmotivated.

██ In *Swanson v. Westport Lumber Co.*, supra, we declared:

> "* * * [T]his court should give weight to the findings of the hearing officer, especially insofar as the resolution of an issue turns upon the credibility of witnesses. *Martin v. Douglas Co. Lumber,* 4 Or App 69, 476 P2d 940 (1970); *Moore v. U.S. Plywood Corp.,* 1 Or App 343, 462 P2d 453 (1969). Nevertheless, we are not bound by those findings. *Hannan v. Good Samaritan Hosp.,* supra [4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971)]. We cannot ignore the other evidence contained in the record." 4 Or App at 420-21.

In view of the voluminous record in this matter besides the hearing transcript, and the fact that the referee

heard only the testimony of claimant and his wife, credibility of witnesses is of limited significance in resolving the issues herein. Our de novo review convinces us that the circuit court was correct in awarding claimant 75 per cent of the maximum available for unscheduled low back disability.

Affirmed.