Argued July 21, reversed August 25, 1975

SCOWN, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND (No. 409-783), *Appellant.*

539 P2d 160

*Janet A. Metcalf,* Assistant Attorney General, Sa-
lem, argued the cause for appellant. With her on the

brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Jan Thomas Baisch,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

The sole issue in this workman's compensation case is the extent of claimant's permanent disability. Both the referee and the Workmen's Compensation Board awarded him 160 degrees which is 50 percent of the maximum allowable for unscheduled permanent disability. The circuit court increased the award to permanent total disability. The Fund appeals, seeking reinstatement of the 50 percent award allowed by the referee and the Board.

Claimant was 57 years old at the time of hearing. He has an eighth grade education and is functionally illiterate. He has a full scale I.Q. of 85. With reference to his work history, injury, medical history, treatment and evaluations, we adopt the following from the referee's opinion and order:

"* * * * *

"* * * In years past he worked with his father as a carpenter but since 1952 he has been a longshoreman. In recent years, with the seniority that he has accrued, he has been able to obtain a job as a lift truck driver, lighter work than normal longshore duty. Operating a lift truck on the docks, however, does jostle the driver, who is required frequently to get off and on the vehicle and to climb over cargo on occasion and do occasional lifting.

"On February 3, 1973 claimant slipped on some

dried peas on the dock and fell, injuring his low back and left hip. As a result he missed a brief period of work for medical care and the claim was closed originally with no permanent disability award.

"Claimant returned to work for about 18 days, then quit working because he was feeling weak due to unrelated health problems and due to back and hip pain. He hasn't returned to work since then.

"The claim was reopened. One of the treating doctors, Dr. David Lang, feels that, as a result of the accident acting on a degenerative spine, claimant is not now, nor will he ever be, capable of returning to heavy labor.

"The Back Evaluation Clinic of the Disability Prevention Division found minimal loss of function due to the accident due to chronic lumbosacral sprain on the left and indicated that claimant could do some kind of work but not his former job.

"Psychological evaluation reveals claimant to be of dull-normal intelligence and functionally illiterate. There is evidence of brain damage (there had been a prior injury to his head) and a depressive reaction.

"Present psychopathology, according to Dr. Norman W. Hickman, probably is at least moderately related to the 1973 accident and there is little reason to anticipate any improvement in the emotional status of claimant.

"Dr. Hickman felt there to be a slight chance of helping claimant through counseling, which was authorized by the Disability Prevention Division but, after two sessions, claimant failed to return for further counseling.

"Claimant has a variety of pre-existing unrelated health problems (emphysema, anemia, probable brain damage, and post-gastectomy status).

Although repeatedly testifying to the constancy of his back and hip pain (aggravated by almost anything he does) claimant admitted that his general health has figured prominently in his decision to quit working the last time and to stay inactive. He is disinterested in getting another job and denies that there are easier jobs available to him on the docks for which he might be eligible by reason of seniority. In fact, he wants to live and enjoy life while he has the opportunity.

"His wife works.

"*  *  *  *  *"

Both the referee and the Board found that claimant lacked motivation to work.[1] The circuit court concluded that claimant's indicated lack of motivation was really evidence of psychopathology and brain damage. In this connection we point out that counseling had been recommended to claimant by psychologist Dr. Hickman and after two sessions claimant's out-

---

[1] Claimant testified:

"Q. [SAIF counsel] Did you give consideration to finding an easier job?

"A. I did not want any other job.

"*  *  *  *  *

"Q. [SAIF counsel] Is it fair to say that you are not interested in obtaining any other job or retraining for any other kind of job?

"A. I don't want any other kind of job. I want to live while I still can and enjoy some of it while I have the opportunity.

"*  *  *  *  *

"Q. [Claimant's counsel] Do you know of any job lighter than driving a lift truck, that you would be able to get, or could do today?

"A. There is nothing that I would be able to handle, *none that I want.*

"Q Well, do you know if there is any that you could get, even if you wanted them or not, that are lighter than driving a lift truck?

"A. *I don't want to work down there anymore.*" (Emphasis supplied.)

look was improved. He did not keep his next appointment and could not be reached for further appointments. We think his failure to continue counseling is a further evidence of lack of motivation and negates the above-mentioned conclusion of the court.

We adopt the following from the Board's order on review:

"* * * * *

"There is at best a moderate physical impairment and except for a brief period following the initial treatment, claimant has not worked since the injury. There is a definite pattern of unwillingness to seriously consider re-employment or physical or vocational improvement toward re-employment. The claimant has some moderate disability attributable to the accident, but it falls far short of permanent total disability.

"The Board, on review, considering claimant's physical impairment and in addition, his age, education and underlying nervous tensions, concurs with the Referee in finding claimant's permanent disability is not total, but is equal to 50% of the maximum allowable by statute for unscheduled disability."

Reversed.