Argued October 27, affirmed November 29, reconsideration denied December 22, 1976, petition for review denied January 18, 1977

LUCKY, *Appellant,*
*v.*
STATE ACCIDENT INSURANCE FUND et al,
*Respondents.*
(No. A-76-02-02683, CA 6670)

556 P2d 712

*Charles Paulson,* Portland, argued the cause and filed the brief for appellant.

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

LEE, J.

**LEE, J.**

This workmen's compensation appeal involves the single issue of the extent of claimant's permanent disability resulting from a compensable injury received on October 30, 1973. Claimant contends that the cumulative effect of a neck injury suffered while working as a laborer for the Multnomah County Road Department *and* the attendant psychopathology triggered by that injury has rendered him permanently and totally disabled.[1]

Permanent and total disability benefits were, in fact, awarded to claimant by the Board's referee who concluded that while the medical evidence indicated a "minimal cervical injury," claimant's emotional problems, stemming from the industrial accident, would probably prevent him from returning to gainful employment.

Upon appeal to the Workmen's Compensation Board by the State Accident Insurance Fund, the referee's order was modified in an opinion holding in relevant part that:

> "* * * [C]laimant received a neck injury. Dr. Ehrensperger, a chiropractic physician who was claimant's family physician, diagnosed a cervical muscular strain. Claimant was later examined by Dr. Cruickshank who found acute cervical sprain among other things and fitted claimant with a cervical collar in February 1974. Claimant has never returned to work.
>
> "In April 1974 Dr. Mason, after examining claimant, found cervical spine strain, degree questionable, with gross emotional overlay and extreme voluntary restriction to ranges of motion concerning claimant's neck. Claimant continued to wear his cervical collar although both * * * Dr. Cruickshank [and a second examining physician] were of the opinion that he had become overly fixed with the cervical collar and * * * asked him to

---

[1]"Permanent total disability" means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the workman from regularly performing any work at a gainful and suitable occupation. ORS 656.206(1)(a).

remove it and try to get along without it. Apparently claimant did not do so.

"A psychological evaluation of claimant revealed his intellectual resources placed him in the lowest 5% of the general population, he was illiterate with severe educational deficiency. The limited intellectual resources are not attributable to the industrial injury but the psychopathology is and the prognosis for restoration and rehabilitation of claimant was extremely poor.

"* * * * *

"At the present time claimant has made no effort to find work and the Referee concluded that it was probably not reasonable to expect him to look for work which he could not perform. Claimant is receiving total disability compensation from Social Security and Multnomah County amounting to $522 per month. At the time of his injury he was earning approximately $734 per month * * *.

"* * * * *

"The Board, on de novo review, finds that claimant is not permanently and totally disabled but that he has, as a result of a minimal physical injury coupled with extreme emotional overlay which is attributable to the industrial injury, suffered a substantial loss of earning capacity.

"* * * * *

"The order of the Referee * * * is modified. Claimant is awarded 224° of a maximum of 320° for his unscheduled neck and emotional disability."

Dissatisfied with the Board's order, claimant appealed to the circuit court. As a result of its own review of the record, including the testimony of the claimant and all medical evidence, the circuit court affirmed the order of the Board, concluding that

"* * * the claimant's physical disability attributable to [the] accident is minimal. * * * [H]e has some degree of functional overlay which is disabling and which is attributable to the accident. I am not satisfied that the functional overlay, plus the minimal physical disability, amount to permanent total disability. I note parenthetically there is no evidence that functional overlay is *ipso facto* permanent. * * * [T]here is substantial evidence of

exaggeration of symptoms. I refer specifically to the glove-type hypesthesia, to the reported self-limitation of motion, to the variation in reporting hypesthesia, to the variation in reported sensitivity on examination. Finally, I do not detect any motivation to return to work. I do not find that plaintiff has been permanently and totally disabled."

We concur in that judgment. Our own review of the record indicates that although the "emotional overlay" attributable to the less than severe neck injury has, in fact, resulted in the reduction of claimant's earning capacity, the award of 70 percent of the maximum ordered by the Board is adequate.[2]

Affirmed.

[2] *Compare: Brusco v. B.P. John Furniture,* 26 Or App 831, 554 P2d 562 (1976); *Scown v. SAIF,* 22 Or App 354, 539 P2d 160 (1975); *Suell v. SAIF,* 22 Or App 201, 538 P2d 84 (1975); *House v. SAIF,* 20 Or App 150, 530 P2d 872 (1975).