Argued July 22, affirmed September 10, 1970

# COOPER, *Respondent, v.* PUBLISHERS
# PAPER COMPANY, *Appellant.*

### 474 P2d 27

*William L. Hallmark,* Portland, argued the cause for appellant. With him on the briefs were McMenamin, Blyth, Jones, Joseph & Lang and Daryll E. Klein, Portland.

*William A. Babcock,* Springfield, argued the cause for respondent. With him on the brief were Babcock & Ackerman, Springfield.

Before SCHWAB, Chief Judge, and FOLEY and BRANCHFIELD, Judges.

BRANCHFIELD, J.

This is an appeal by the employer from a circuit court decision that the claimant was totally and permanently disabled as a result of on-the-job injuries.

The claimant was picking up pulp from underneath a machine at his place of employment, when he fell backwards, causing the injury to his back. Claimant is now 61 years of age, had a fifth grade education and no special job training. He has always worked at manual labor, mostly in sawmills and in the woods.

Since his accident, claimant's injuries have required extensive medical and hospital care, surgery and other treatment. In September, 1966, two months after his accident, the claimant was subjected to intensive surgery, consisting of the following:

> "Hemilaminectomies L3, L4 and L5 on the left. Rhozolysis L5 nerve root on the left. Excisions nucleus pulposus L3 and L4 disks."

Medical reports in the file contain objective findings of pain in the back and left leg and substantial limitation of motion. Neurological examination disclosed sciatic nerve damage of a permanent character. Cooper has a congenital instability of his lumbo-sacral junction and appears to be much more senile than his years would indicate. The reports indicate pre-existing arteriosclerosis of both legs and osteoarthritis of the back. Testimony before the hearing officer by the claimant and his relatives was that he has pain and limitation of motion in his low back, pain and weakness of his left leg, and has difficulty walking, bending, stooping and lifting. Those persons testified also that claimant is unable to engage in sustained physical activity.

On April 9, 1968, Cooper's claim was initially closed and he was awarded temporary disability compensation together with permanent partial disability equal to 50 per cent loss of an arm by separation for unscheduled disability. In December, 1968, a hearing officer of the Workmen's Compensation Board conducted a hearing and increased Cooper's permanent partial disability award to 80 per cent loss of an arm by separation for unscheduled disability. On review, the Workmen's Compensation Board affirmed the decision of the hearing officer. The circuit court ruled

that plaintiff had been permanently and totally disabled and also ordered the employer to pay certain disputed medical bills incurred after the claim was initially closed.

The employer contends here that the circuit court should have accorded weight to the findings of the hearing officer, should not have increased the disability award and should not have ordered the employer to pay for medical services incurred after April, 1968.

■ The Supreme Court and this court have handed down a number of opinions dealing with the weight to be given to the findings of the hearing officer and circumstances which warrant the giving of weight. We consider it unnecessary to review those authorities here. The reason for the rule that, in proper cases, weight should be given to the findings of the hearing officer is expressed in *Moore v. U.S. Plywood Corp.*, 1 Or App 343, 462 P2d 453 (1969), where the court said:

> "In an appeal under the Workmen's Compensation Law the trial judge, reviewing only the record, cannot give us the benefit of his opinion of the credibility of 'live' witnesses. The hearing officer sees and hears the witnesses. Thus, for the same reasons we give weight to the findings of the trial judge on the issue of credibility in cases where he sees and hears the witnesses, we give weight to the findings of hearing officer on the matter of credibility of witnesses in appeals under the Workmen's Compensation Law."

■ Since the opinion of the hearing officer in this case was based largely upon a movie put in evidence by the employer and interpretation of medical reports rather than the testimony of the live witnesses, the

trial judge and this court are equally free to examine and interpret that evidence. "Credibility" of live witnesses played little, if any, part in the hearing officer's opinion and order. The mistake of the hearing officer resulted from his failure to correctly relate Cooper's pre-existing physical ailments to his total condition following the industrial accident.

The employer introduced in evidence in opposition to defendant's claims of disability a movie film taken without the claimant's knowledge. The movie showed claimant assisting in the moving of a kitchen range on a hand truck from a pickup truck to and up the steps of a house. It also showed claimant moving about in the bed of the pickup truck and, at a later date, picking up filberts and walking about the small filbert orchard owned by the claimant. It demonstrates that the claimant has severe limitation upon his activities. He walked as though it pained him to do so, his movements were slow and guarded and he appeared to have difficulty in walking, bending, stooping and lifting. When he arose, it was obviously with great difficulty, since he placed his hand on his left knee and appeared to push himself up with his arm rather than his leg. The employer insists that the movie showed claimant is not disabled, while the claimant said the movie proved great disability. We have viewed that movie absent the ardor of advocacy. It does not prove the case for either side. It demonstrates that claimant is not completely helpless, but it fails to demonstrate that he is capable of gainful employment.

There are 30 medical reports in the file, some from treating doctors and some from doctors employed by the employer to examine the claimant. They contain differences of opinion on relatively trivial

signs such as whether claimant's dorsalis pedis pulse can be palpated, whether his left knee jerk is as strong and active as the right, and whether his left calf and thigh are swollen or atrophied. But not one medical report said he was employable at the time the report was made, although some of the reports indicated a belief in employability at an unspecified future time. One of the latest reports, dated May 14, 1968, said:

> "On examination he appeared much as he did previously, with much stiffness in his back and he is very slow in moving around. Lateral bending is almost nil now so that the physical stiffness of his back seems worse than when I saw him previously."

The employer relies on the opinion of Dr. Clarke which was dated about a month and a half prior to the initial closure of the claim. Dr. Clarke did not treat the claimant, but was employed by the employer to conduct an examination. In that report Dr. Clarke said:

> "I don't mean that he is a total permanent by any stretch of the imagination * * *."

Taken alone, that language is in direct conflict with the opinion of one of his treating doctors who had said a few months earlier:

> "He is unable to work, and it appears to me that he will not again be able to work."

An expanded quotation of Dr. Clarke's letter demonstrates little, if any, difference between his opinion and that of the treating doctor. Dr. Clarke said:

> "I have no objection to recommending this patient be referred to vocational rehabilitation for physiotherapy, *but I don't think this man, because of his age and attitude and problem, is necessarily going to be re-employable.* Certainly not at the type of work he did before, and I don't think he would

be one to be a good candidate to attempt to restore him to any type of work.

"I don't think that he is a total permanent by any stretch of the imagination but I do think that therapy may make him feel better. I think he is going to continue to have complaints, and *I don't believe he is going to have a good work record in the future*." (Emphasis supplied.)

No report describes the claimant as presently able to return to work. Cooper's present physical condition, resulting partly from his injury and partly from pre-existing causes, together with his lack of education and training for anything other than hard physical labor present a picture of a man who is unable to engage in any sustained employment, even if employment is available.

The employer argues that Cooper's isolated activities such as assisting in moving a kitchen range, picking up filberts, driving a log truck two or three times, using a truck to tear down a shed, and then picking up boards from the shed and placing them in the truck to be hauled away, all demonstrate his ability to work. But these intermittent and unsustained activities alone do not indicate employability. Other jurisdictions have held that the ability to perform some tasks does not prevent a finding of total permanent disability. In *McCrae v. Brandt Aero Service*, 168 NW2d (Minn 1969), claimant, a flight instructor, was injured while instructing a student pilot. Following the injury he had headaches, numbness and pain in his hands and arms and limited motion in his neck. Following the injury he was able to work only three to four hours at a time, was irritable and suffered from a partial loss of memory. The court found him to be totally and permanently disabled.

In *Texas Indemnity Insurance Co. v. Bonner*, 228 SW2d 348 (Tex 1950), the claimant, a tractor operator, injured his back in a tractor accident. Following the accident, the claimant was able to work short shifts parking cars and helping in his wife's laundry business. He was unable to continue as a tractor operator. The court found that he was totally and permanently disabled, since he was incapable of performing the usual tasks of a workman.

■ Larson's Workmen's Compensation Law, § 57.51 says:

" 'Total disability' in compensation law is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work did not necessarily rule out a finding of total disability nor require that it be reduced to partial. The difficulty, of course, is to phrase a rule delimiting the amount and character of work a man can be able to do without forfeiting his totally disabled status. The rule followed by most modern courts has been well summarized by Justice Matson of the Minnesota Supreme Court in the following language:

" 'An employe that is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.' "

■ The circuit court correctly found that Cooper was totally and permanently disabled.

■ The employer claims that claimant received another injury in June, 1968, after the initial closure of his claim but before his case was heard by the hearing officer. The claimant testified to the hearing officer

that he had gone back to the hospital in June of 1968, following the use of a pickup truck to pull down an old shed. His testimony was:

"A   I was just trying to work around the yard, and I made a try to pick up something, and it didn't work.

"Q   Did you have an accident of any kind?

"A   No, it wasn't an accident, it was just that my back wouldn't stand it."

That testimony is not evidence of an accident. There was no other evidence tending to show that claimant had suffered any accident. The circuit judge did not err when he found that the incident of June, 1968, did not represent a new injury or accident nor when he ordered payment by the employer of medical expenses incurred at that time.

Affirmed.