WILSON, *Respondent,*
*v.*
WEYERHAEUSER COMPANY, *Appellant.*
(No. 76-3408, CA 6815)
567 P2d 567

J. W. McCracken, Jr., Eugene, argued the cause and filed the brief for appellant.

A. J. Morris, Eugene, argued the cause for respondent. With him on the brief was Hoffman, Morris, Van Rysselberghe & Giustina, Eugene.

James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, and Kevin L. Mannix, Assistant Attorney General, Salem, filed a brief amicus curiae for State Accident Insurance Fund.

Samuel A. Hall, Jr., and Malagon, Starr & Vinson, Eugene, filed a brief amicus curiae for Oregon Trial Lawyers Association.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

The issue in this workers' compensation case is the extent of claimant's permanent disability.

Claimant, who was then 53 years old, sustained a compensable injury to his lower back in September, 1973 while employed as a relief operator at Weyerhaeuser Company. He immediately sought medical treatment. A conservative treatment program for back strain was prescribed and, upon the recommendation of his orthopedist, claimant returned to work. Approximately six weeks later he reinjured his back. After a myelogram, a laminectomy and lumbar spinal fusion were performed. The surgery was successful and claimant's treating physician concluded that the permanent residual effects of the injury were of moderate severity. Claimant was thereafter released for work with the restriction that he should not do anything which would place heavy demands on his back. He cannot endure repeated bending or prolonged standing, sitting or driving, and he is sometimes unstable due to numbness in the legs.

Claimant reported to Weyerhaeuser for work but was informed that the company had no available jobs which he could perform in view of his medical limitations. Thereafter, claimant made inquiries at three furniture stores, a door factory and several lumber mills. In each case he was informed that it would be futile for him to make a formal employment application in view of his back condition.

Claimant has an 8th grade education and no special skills. He has worked for his entire career at jobs involving heavy labor. His vocational rehabilitation counselor concluded that there were no realistic prospects for retraining him for other employment. The referee found him to be sincerely motivated to work, but persuaded that it would be impossible.

The Closing and Evaluation Division of the Workers' Compensation Board awarded claimant 112 de-

grees unscheduled permanent partial disability (35 percent of maximum). The hearings officer found that claimant fell within the odd-lot category and awarded permanent total disability. The Workers' Compensation Board reduced the award to 256 degrees unscheduled permanent partial disability because it felt that vocational rehabilitation should be tried. The circuit court set aside the order of the Board and reinstated the hearings officer's award of permanent total disability. The issue, therefore, is whether claimant's disability is partial or, under the odd-lot doctrine, total.

We are asked in this case to reexamine the concept of motivation as an element of permanent total disability under the odd-lot doctrine. We initially adopted the odd-lot doctrine in *Swanson v. Westport Lumber Co.,* 4 Or App 417, 423, 479 P2d 1005 (1971), and amplified its presumption and burden of proof aspects in *Deaton v. SAIF,* 13 Or App 298, 303, 509 P2d 1215 (1973), wherein we adopted by reliance Professor Larson's analysis and procedural recommendation:

> "In many of these cases, the central issue becomes one of proof: How is unavailability or availability of work shown, and who has the burden of proof? Must the employee prove the unavailability of suitable employment to one in his condition, by evidence of actual attempts to obtain a job or by evidence of employment conditions in that vicinity, or must the employer affirmatively show the availability of the kind of jobs that claimant can still perform? * * *."
>
> "* * * * *
>
> "A suggested general-purpose principle on burden of proof in this class of cases would run as follows: If the evidence of degree of obvious physical impairment, coupled with other factors such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant * * *." 2 Larson, Workmen's Compensation Law § 57.21.

The result was a *pushmi-pullyu*[1] procedure of sequential burdens of proof which is essentially unsuited to the nature of the decision to be made. The *Swanson/Deaton* procedure was formulated to enable fact finders to make decisions by comparing the facts to objective decisional standards, *see*, e.g., *Harrison v. SAIF,* 24 Or App 799, 547 P2d 164, *rev den* (1976); *Vester v. Diamond Lumber Co.,* 21 Or App 587, 535 P2d 1373 (1975); *House v. SAIF,* 20 Or App 150, 530 P2d 872 (1975), when in reality our decisions, like jury verdicts in personal injury actions, are largely subjective in nature. *Cf., Hill v. U.S. Plywood-Champion,* 12 Or App 1, 6, 503 P2d 728 (1972), *rev den* (1973) (Schwab, C. J., dissenting).

■ In particular, the existence or not of motivation assumed controlling procedural and substantive significance out of proportion to other relevant facts. In *Deaton v. SAIF,* 13 Or App at 304-305, we decreed the treatment to be accorded to motivation as an essential element of proof in contraposition to proof of job availability:

"* * * The consistent thread of [our] opinions * * * is that (1) motivation is not necessary to establish a *prima facie* case of odd-lot status if the medical facts when considered along with other factors, such as age, education, mental capacity and training of themselves support the claimed inability to work, and (2) evidence of motivation to seek and work at gainful employment is necessary to establish a *prima facie* case of odd-lot status if the injuries, even though severe, are not such that the trier of fact can say that regardless of motivation this man is not likely to be able to engage in gainful and suitable employment. The burden of proving odd-lot status rests upon the claimant."[2]

---

[1] *See,* Lofting, The Adventures of Doctor Doolittle.

[2] In 1973 the legislature enacted former ORS 656.206(2) (Or Laws ch 614), which provided:

"The workman has the burden of proving permanent total disability status. Unless the medical evidence of a workman's unscheduled physical impairment, coupled with other relevant factors

The need for a more workable definition and greater procedural flexibility has become evident. It is therefore appropriate that we reexamine the concept of motivation as it affects the odd-lot doctrine, in light of experience gained since *Swanson.* To do so, we look to the purpose of the Workers' Compensation Law and to the nature of the concept of permanent total disability under that law.

■■ A basic purpose of the Workers' Compensation Law is to fairly distribute the risk of loss from physical injury to workers arising from industrial enterprises essential to the state's wealth and prosperity. *See,* ORS 656.004. Cf., Allen v. SAIF, 29 Or App 631, 633, 564 FP2d 1086, *review pending* (1977). Other than death, the most extreme industrial risk which the law addresses is the permanent loss of a worker's ability to earn a living by regularly engaging in a gainful and suitable occupation. Accordingly, the ultimate legislative definition of permanent total disability is in terms of a worker's inability to sell his or her services in a competitive market rather than solely in terms of physical incapacity. ORS 656.206(1)(a) provides:

> " 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the workman from regularly performing any work at a gainful and suitable occupation."

■ In view of the statutory definition, we have consistently held that in order to be deemed permanently and

---

affecting his employability, establishes, prima facie, the workman's permanent total disability status, he must also establish his willingness to seek gainful and suitable regular employment."

Contrary to the suggestion of the State Accident Insurance Fund in its amicus brief, that statute did not codify the odd-lot doctrine. The odd-lot doctrine is, in fact, merely an application of another legislative act, ORS 656.206(1)(a), which defines permanent total disability. Rather, former ORS 656.206(1) effectively codified the formula in *Deaton v. SAIF,* 13 Or App 298, 509 P2d 1215 (1973). That codification was subsequently repealed. Oregon Laws 1975, ch 506.

totally disabled a worker's physical impairment need not be complete, i.e., the worker need not be a "basket case," if the injury has left him or her incapable of performing any services for which there exists a reasonably stable market. *See,* e.g., *Deaton v. SAIF,* 13 Or App 298, 509 P2d 1215 (1973); *Swanson v. Westport Lumber Co.,* 4 Or App 417, 479 P2d 1005 (1971); *Cooper v. Publishers Paper,* 3 Or App 415, 474 P2d 27 (1970).

■ The burden of establishing permanent total disability is upon the claimant and nothing in the odd-lot doctrine serves to shift it. *See, Deaton v. SAIF,* 13 Or App at 305; *Brennan v. SAIF,* 11 Or App 530, 504 P2d 142 (1972). There is no formulaic method of carrying this burden. Permanent total disability may be established by any evidence which demonstrates to the satisfaction of the trier of fact, that as a consequence of a compensable injury, the claimant has been rendered unable to sell his services on a regular basis in a hypothetically normal labor market. *See, Hill v. U.S. Plywood-Champion,* 12 Or App 1, 503 P2d 728 (1972), *rev den* (1973); *Swanson v. Westport Lumber Co.,* 4 Or App 417, 479 P2d 1005 (1971); *Cooper v. Publishers Paper, supra;* 2 Larson, Workmen's Compensation Law 10-38, 10-39, § 57.21, and § 57.51 (1976).

■ ■ There are two types of permanent total disability: (1) that arising entirely from medical or physical incapacity—such cases are easier to determine and seldom find their way to us on appeal—and (2) that arising from physical conditions of less than total incapacity plus nonmedical conditions, which together result in permanent total disability. Typically, such nonmedical evidence relates to age, training, aptitude, adaptability to nonphysical labor, mental capacity and emotional condition, as well as the condition of the labor market. The so-called "odd-lot doctrine" is nothing more than a shorthand recognition that permanent total disability may be based upon a combination of

medical and nonmedical or "wage-loss" conditions.[3] It should not be complicated or distorted beyond that meaning.

The rules as stated in *Deaton v. SAIF, supra,* tend to cause motivation to be treated inappropriately as the thing to be proved rather than as evidence of something else. The focus on motivation itself should not be so strong for, in reality, motivation is only one among many possible circumstances which may be helpful in determining ultimate facts.

There are two ultimate facts regarding which motivation is often relevant: *availability of employment* and *extent of disability.* These elements of permanent total disability are distinct and evidence of motivation may take different form according to which element the proof is directed toward.

■ *Availability of Employment.* The usual area of relevance of proof of motivation is as nonmedical evidence tending to establish claimant's *de facto* inability to earn wages in the labor market. This often takes the form of testimony by a partially impaired worker that he has unsuccessfully attempted rehabilitation, e.g., *Suell v. SAIF,* 22 Or App 201, 538 P2d 84

---

[3]The interplay of the two types of evidence is critical to an effective application of the disability concept:

"* * * A claimant may be, in a medical sense, utterly shattered and ruined, but may by sheer determination and ingenuity contrive to make a living for himself; conversely, a claimant may be able to work, in both his and the doctors' opinion, but awareness of his injury may lead employers to refuse him employment. These two illustrations will expose at once the error that results from preoccupation with either the medical or the wage-loss aspect of disability. An absolute insistence on medical disability in the abstract would produce a denial of compensation in the latter case, although the wage loss is as real and as directly traceable to the injury as in any other instance. At the other extreme, an insistence on wage loss as the test would deprive the claimant in the former illustration of an award, thus not only penalizing his laudable efforts to make the best of his misfortune but also fostering the absurdity of pronouncing a man nondisabled in spite of the unanimous contrary evidence of medical experts and of common observation. The proper balancing of the medical and the wage-loss factors is, then, the essence of the 'disability' problem in workmen's compensation." 2 Larson, Workmen's Compensation Law 10-4, 10-5, § 57.10 (1976).

(1975); *Robertson v. SAIF,* 17 Or App 280, 521 P2d 1088 (1974); *Hobbs v. SAIF,* 17 Or App 253, 521 P2d 359 (1974), or applied for employment, e.g., *House v. SAIF,* 20 Or App 150, 530 P2d 872 (1975); *Kirkendall v. Stampers J & J Tire Co.,* 18 Or App 56, 523 P2d 1052, *rev den* (1974); *Robertson v. SAIF,* 17 Or App 280, 521 P2d 1088 (1974). Conversely, the insurer may show that the claimant has refused proffered employment for which he or she is fit. Such evidence is relevant as to whether regular, gainful employment is available for a person in the worker's condition, but it is not the only form of proof. Many other facts provable by either side reflect on that issue. The fact finder's determination of whether regular, gainful employment exists for a worker in the claimant's condition must be based on the entire mix of evidence on the issue including, if offered, evidence relating to motivation.

■ *Extent of Disability.* Mental or emotional condition is often a contributive factor to incapacitation and the severity of the mental condition may affect the extent of disability. Such conditions may range in severity from psychopathological conditions such as chronic depression at one end to self-pity, malaise or loss of ambition at the other. The former class of recognized forms of emotional disturbances are significant elements in the assessment of the extent of disability in odd-lot cases where they complement the physical injury. If caused by the industrial accident, mental or emotional conditions may themselves constitute the injury. *See,* e.g., *Elliott v. Precision Castparts,* 30 Or App 399, 567 P2d 566 (1977).

■ The emotional states at the less severe end of the spectrum may reflect and be subject to claimant's exercise of will. As such, the injury is not causal—it merely gives opportunity for expression of common work avoidance desires. These mental states are not pathological, but attitudinal. The claimant's attitude toward a return to work, if positive, may be relevant in assessing whether the condition excludes the claimant

from the labor market or, if negative, whether the claimant is excluded from employment by his or her own will rather than by that of employers.

█ "A broken body can cause a broken spirit," *Seaberry v. SAIF,* 19 Or App 676, 683, 528 P2d 1103 (1974), and the point on the spectrum between psychopathological and attitudinal breakage at which each case falls is a question of degree which the fact finder must infer from all the evidence. That evidence should be considered in all its variety, free from the limiting semantical framework of "motivation." The use of the term should be abandoned except to convey its specific meaning.

█ Therefore, we conclude that evidence of the existence or absence of motivation is not essential to the establishment or disproof of a claim of permanent total disability. Rather, when odd-lot status is in issue and such evidence is offered, it is to be weighed by the fact finder, free from talismanic significance and procedural consequences, along with all other evidence from either party which reflects on the existence, nature and scope of disability.

█ The case at bar illustrates how medical and non-medical evidence can together establish a case of permanent total disability. Claimant's injury is moderately severe. Standing alone it does not establish his inability to regularly engage in a gainful and suitable occupation. The medical evidence establishes, however, that the injury has forever deprived claimant of the ability to perform work which requires a strong back. The nonmedical evidence in this case demonstrates that the ability to perform heavy physical labor has always been claimant's only employment asset. Without that ability, claimant's services have little marketable value. Claimant's limited efforts to find employment have been unsuccessful. His employer, a large company with diverse operations, has been unable or unwilling to reemploy claimant in view of his physical limitations. We find that there is no

realistic likelihood that claimant will be able to sell his services to any employer. *See,* 2 Larson, Workmen's Compensation Law 10-133, 10-134, § 57.16 (1974). In view of all the evidence in the case, we agree with the circuit court and the hearings officer that claimant is permanently and totally disabled.

Affirmed.