Argued March 28, reversed and remanded August 29, 1977

ASKEW, *Respondent,*
*v.*
EDWARD HINES LUMBER CO., *Appellant.*
(No. L-6410, CA 7146)
568 P2d 693

Marshall C. Cheney, Portland, argued the cause for appellant. With him on the brief was Gearin, Cheney, Landis, Aebi & Kelley, Portland.

Claud Ingram, John Day, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Lee and Johnson, Judges.

JOHNSON, J.

**JOHNSON, J.**

This is a workers' compensation appeal concerning the extent of claimant's permanent disability. By determination orders claimant received an award of 288 degrees, 90 percent of the maximum allowable for unscheduled permanent partial disability, which was affirmed by the referee. The Workers' Compensation Board reversed the referee and concluded that claimant had established permanent and total disability. The Circuit Court affirmed.

Claimant, now 43 years of age, sustained a compensable injury to his lower back on November 5, 1968, when he fell from the boom of a log loading machine. He continued to work until November 15, 1968, but has not worked since. Following his injury, claimant received continuous medical treatment, including two surgical procedures: a laminectomy and spinal fusion in 1969, and a second fusion performed in 1973. Following the second surgery, which was not entirely successful, the treating physician concluded:

"As far as manual work is concerned, he is totally and permanently disabled. There are some things he could do on a wage earning basis, such as be a custodian, if it involved not too much bending or lifting; a watchman or what he would like to do, if such a job were available, work for the Wild Life and Game division of the State of Oregon."

Claimant testified that he experiences pain in his shoulders, back and lower legs. He also testified that he has severe restrictions in standing, sitting, bending, lifting, gripping and holding. He stated that he cannot work, and that there is no work to his knowledge that he could do.

While it is apparent that claimant suffered severe injuries which cause him pain, the record does not indicate that he is permanently and totally disabled.

Claimant's own testimony shows that he hunts and fishes frequently. He testified that he could walk a mile to fish before his back would begin to hurt him,

and that he had driven himself from his home near John Day to Detroit Lake to fish with only occasional stops to stretch his legs. Claimant also testified that he drives himself 60 miles round-trip to hunt, and that he can walk a mile while hunting before his back and legs begin to cause him pain. In addition claimant apparently works on his own automobile, walks as much as a mile a day, and has no difficulty sleeping through the night.

The record also reveals a lack of motivation to work. Although claimant completed only the ninth grade and had found that some jobs were not available to him because he did not have a high school diploma, he never attempted to get his G.E.D. He testified that he was interested in working as a nightwatchman, custodian, or a warden for the game commission, but he never made formal application for work anywhere. He stated that he hadn't investigated employment outside of Grant County, nor had he sought rehabilitation training himself after completing a program at the Vocational Rehabilitation Center in 1970 following his first surgery.

In *Wilson v. Weyerhaeuser Co.,* 30 Or App 403, 567 P2d 567 (1977), we reexamined the concept of motivation as an element of permanent and total disability under the odd-lot doctrine and concluded:

"* * * [T]he existence or absence of motivation is not essential to the establishment or disproof of a claim of permanent total disability. Rather, when odd-lot status is in issue and such evidence is offered, it is to be weighed by the fact finder, free from talismanic significance and procedural consequences, along with all other evidence from either party which reflects on the existence, nature and scope of disability." 30 Or App at 412.

The medical evidence viewed most favorably to claimant is equivocal. The principal evidence concerning his physical condition and motivation was claimant's own testimony. That testimony was to a substantial degree contradictory of claimant's assertions of total disability. The referee who saw and heard the

witness was in a superior position to make an evaluation in this case. We adopt the decision of the referee.

Reversed and remanded.

**LEE, J.,** dissenting.

I would affirm the Workers' Compensation Board (Board) and the circuit court in their finding of permanent and total disability. The physician who performed the second fusion reported that

"[f]or reasons which I know not of,[1] there was a laminectomy done to the right of the mid-line between L-3 and L-4. Enough bone was removed to definitely weaken the pedicle at that level and there are also some small spicules of bone in the soft tissues at that level."

In a subsequent report that physician reported "there is seen to be motion between L-4 and L-5 and possibly between L-5 and S-1" and in a further report that;

"* * * * *

"As *far as manual work is concerned, he is totally and permanently disabled.* There are *some things* he could do on a wage earning basis, such as be a custodian, if it involved not too much bending or lifting; a watchman or what he would like to do, if such a job were available, work for the Wild Life and Game division of the State of Oregon.

"I think his employer should see what he can come up with in regard to possible part-time work at least or he should be referred once again to Rehabilitation to see if they can provide him with something. If all these efforts fail, *he would unfortunately have to be considered totally and permanently disabled.*" (Emphasis supplied.)

The Board properly focused upon the limitations which the medical evidence attached to those things which claimant might do.

When claimant inquired about employment as a Pinkerton guard and disclosed that he had undergone

---

[1] The record contains no evidence that a myelogram was taken as part of the diagnostic work-up prior to surgery.

low back surgery he was informed that it would be useless to file a job application.

Claimant's commendable candor in admitting limited hunting, fishing and repair of his personal car should not exclude him from the statutory definition of "permanent and total disability."[2]

In my opinion the medical evidence of permanent and total disability outweighs the nonmedical evidence that claimant is capable of obtaining suitable regular and continuous work. *Compare Wilson v. Weyerhaeuser Co.,* 30 Or App 403, 567 P2d 567 (1977), in which "[t]he surgery was successful and claimant's treating physician concluded that the permanent residual effects of the injury were of moderate severity" but we still found permanent and total disability. 30 Or App at 405.

I agree with the trial judge who found that

"* * * claimant's physical impairments, coupled with his mental capacity, education, training and age place him prima facie in the odd lot category and therefore motivation is not a factor.

"The burden had shifted to the employer to show that some kind of suitable work is regularly and continuously available to the claimant. This the employer has failed to do."

Accordingly, I respectfully dissent.

---

[2]ORS 656.206(1)(a) reads as follows:

"As used in this section:

" 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the workman from regularly performing any work at a gainful and suitable occupation."