## CONN, *Appellant,*
*v.*
## ROSEBURG LUMBER COMPANY, *Respondent.*

(No. 77-206, CA 8844)

573 P2d 319

Jack Polance, Eugene, argued the cause for appellant. On the brief were Stephen D. Brown, and Gildea & McGavic, P.C., Eugene.

Phillip A. Mongrain, Beaverton, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Joseph, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

In this workers' compensation case the issue on appeal is whether claimant is permanently and totally disabled.

Claimant, now aged 54, was injured in November, 1972, when she slipped in a hallway and fell on her back. Her job involved pulling on a "dry chain" in a plywood plant. Dr. Goodwin, an orthopedist, examined claimant on December 18, 1972, and concluded that claimant "appears to have a grossly unstable lower back," a "superimposed acute strain of the lumbar spine," and might have an extruded disc. On January 27, 1973, he performed a laminectomy with the excision of claimant's extruded disc. He also performed a spinal fusion and a nerve root decompression at the same time. In November, 1973, Dr. Goodwin reported that claimant had "a fairly reasonable fusion," but that claimant nonetheless had had an increase of pain in her back. He also reported that claimant "had some stiffness of the neck, pain in the neck with motion, an absence of reflex of biceps on the left, as well as some decreased grip in the left hand." He noted that these latter complaints were unrelated to claimant's industrial accident.

On January 7, 1974, claimant was examined by Dr. Gantenbein on behalf of the Workers' Compensation Board (Board). He noted that the "emotional tension [of claimant] appears minimal" and that "a change of occupation appears advisable, because of the restriction in [claimant's] ability to bend and twist." On January 18, 1974, claimant, upon the recommendation of Dr. Gantenbein, was examined by the Back Evaluation Clinic. The report of the clinic states in pertinent part:

> "It is our opinion that the patient's condition should be considered stationary for closure purposes. We don't think there is anything to be gained particularly by examining this patient longer. We do not feel she is able to return to her former occupation. We do feel that she

would be capable of doing light activities with no stresses to her back in the form of saleswork, clerical work, etc., if she has the opportunity for same and needed some training along such lines [sic] * * *. We would classify her total loss of function of the back as it exists today as being moderate and the loss of function due to this injury as being moderate * * *."

In June, 1974, claimant was examined by her general practitioner, Dr. Remy, who concluded that claimant could not work. In July, 1974, Dr. Short, an orthopedist, examined claimant at the request of Dr. Remy and advised claimant against returning to her former work. In August, 1974, at the request of Dr. Remy, claimant was examined by Dr. Raaf, a neurosurgeon, who stated that he agreed with Dr. Short's conclusions and indicated that he thought it might be advisable for another fusion to be performed, but he doubted that claimant had a protruded disc. In January, 1975, Dr. Singer, an orthopedic surgeon, examined claimant at the request of employer and stated that claimant suffered from "acute and chronic low back pain, status post-lumbosacral fusion, with possible pseudoarthrosis." No physician's report more recent than January, 1975, appears in the record.

In January, 1974, the Board had claimant examined by Dr. Perkins, a clinical psychologist. She noted that claimant's husband and father had recently died and that claimant was feeling depressed for those reasons. She concluded:

"* * * Intellectually, this woman has about average resources. She does not feel that she will be able to return to the kind of work she has done in the past and presently she does not think she could hold down any full-time job. She even questions whether she will ever be able to return to work without significant improvement in her physical condition. * * * The evaluation in the personality area reveals a moderately severe depressive reaction with anxiety and some focus on physical symptoms. Mrs. Conn is very upset about the predicament in which she finds herself. She is concerned about

[ 30 ]

her ability to provide for herself in the future, considering herself to be severely handicapped. She recently lost her husband and father which clearly has contributed to the discouragement which she is exhibiting * * *."

Dr. Perkins concluded that "[t]he prognosis for restoration and rehabilitation in this instance is fair to poor considering all factors."

At the hearing in November, 1975, claimant complained of a constant pain in her low back and stated that if she performs even mild tasks around the house she has to take pain pills or lie down for a period of time. She stated that she was unable to walk more than a couple of blocks without experiencing a "grinding motion" in her back and that she cannot sit or stand for more than 20 to 45 minutes at any one time. Claimant's daughter testified at the hearing and corroborated these complaints from claimant. The referee's opinion states "there appeared to be no reason to question claimant's credibility or motivation. She testified in a candid and straightforward manner."

Robert Demers, a vocational rehabilitation counselor with the Oregon State Division of Vocational Rehabilitation, testified at the hearing. Demers had spoken with claimant on two occasions for about one hour's total time. Demers rejected claimant's application for vocational rehabilitation on the grounds that he did not believe that claimant could obtain any job in the Eugene/Lane County area where claimant resides. At the hearing Demers testified that claimant was not retrainable and was unemployable considering the job market in the Eugene/Lane County area. Demers testified that claimant "indicated a willingness to go to work and a want to go to work, but * * * that she just didn't know what she could possibly do because of the implications." Demers admitted that he had never questioned claimant as to whether she had a General Educational Development certificate (GED),[1] though

---

[1] Claimant had taken a GED test, but had failed the math portions of the test and was considering retaking the test at the time of the hearing.

he testified that a person who has a GED has better job prospects than a person without a GED or high school diploma.

A labor market analyst with the Oregon State Employment Division testified at the hearing that, assuming claimant's physical complaints to be true, her job prospects were virtually non-existent. A brief report made by a counselor with the Division of Vocational Rehabilitation was admitted into evidence. This report concluded that, "I am unable at this time, due to [claimant's] physical condition and interests to suggest any formal or on-the-job training which would enable her to return to work."

At the time of the accident claimant had been engaged in her present occupation in a plywood factory for about seven years. Her only previous work experience was "five or six" years as a grocery checker—the record does not disclose when.

The referee concluded that claimant was permanently and totally disabled:

> "Taking into account her age, education, training, adaptability and potential, together with the residuals of the injury in question, I conclude that she is unable to work gainfully, suitably and regularly. This conclusion is made without reference to possible changing economic conditions."

The Board reduced the award to 50 percent low back disability, and stated:

> "The Board, on de novo review, believes the medical evidence is not sufficient to support a finding that claimant is now permanently and totally disabled. * * * The Board concludes that claimant who, at the present time, is in her early fifties, has completed eleven grades of school, has an average intelligence, whose occupational experience includes working for six years as a checker in a grocery store, cannot be considered unable to work gainfully, suitably and regularly."

The circuit court awarded claimant 70 percent unscheduled disability for her back injuries, and stated:

"I am satisfied that Claimant is not permanently and totally disabled. She has not carried the burden of proof on the issue of motivation which she must to come within the 'odd-lot' doctrine. Indeed, it appears that part of her lack of motivation is due to the untimely deaths of her husband and her father, factors unrelated to her accident."

In this close case we conclude that claimant has met her burden of proving that she is permanently and totally disabled. The medical evidence indicates that claimant's injuries are not insubstantial, and claimant testified that her activities were severely limited because of her injuries. The referee explicitly found the claimant to be credible, and we give his opinion of claimant's credibility great weight. *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), *rev den* (1971). The uncontradicted evidence from two vocational counselors and a labor market analyst that, assuming claimant's account of the limitations placed upon her due to the pain she was suffering from her injuries was true, claimant was unemployable and untrainable considering the job market and her abilities. Further, the record reveals that claimant wants to work and has seriously sought vocational counseling, but is simply unqualified for any job which she is physically capable of performing. Accordingly, we conclude that claimant's "injury has left * * * her incapable of performing any services for which there exists a reasonably stable market." *Wilson v. Weyerhaeuser,* 30 Or App 403, 409, 567 P2d 567 (1977), and she is therefore permanently and totally disabled.

Reversed and remanded.