CORLEY, *Respondent,*
*v.*
WEYERHAEUSER COMPANY, *Petitioner.*
(WCB No. 77-3600, CA 10212)

581 P2d 958

Paul L. Roess, Coos Bay, argued the cause for petitioner. With him on the brief was Newhouse, Foss, Whitty & Roess, Coos Bay.

Robert K. Udziela, Portland, argued the cause for respondent. On the brief were Pozzi, Wilson, Atchison, Kahn & O'Leary and Dan O'Leary, Portland.

Before Schwab, Chief Judge, and Thornton and Buttler, Judges.

THORNTON, J.

[ 449 ]

## THORNTON, J.

In this worker's compensation case the employer appeals from an award of permanent and total disability to claimant, contending that the referee and the Workers' Compensation Board (Board) failed to take into consideration evidence tending to show that claimant was not in fact totally disabled and that he lacked motivation to seek light, gainful employment.

The referee concluded that claimant was permanently and totally disabled. The employer appealed to the Board. The Board affirmed, adopting in toto the referee's opinion.

The evidence relied upon by the employer may be summarized as follows:

Claimant, then 45 years old, sustained a compensable injury in employer's plywood mill on December 7, 1972, when he slipped and fell, twisting his left leg and ankle. He was seen initially by Dr. J. E. Abbott, and was subsequently referred to Dr. C. D. Adams, who performed a medial menisectomy on January 30, 1973, with reefing of the medial collateral ligament. On June 12, 1974, a left lumbar sympathectomy was performed by Dr. William H. Massey.

Claimant was examined at the Disability Prevention Division of the Workers' Compensation Board in September 1974 by Dr. Lewis A. Van Osdel, who made the following diagnosis:

"a. * * * * *

"(1) Status post-arthrotomy, left knee, with excision of the medial meniscus, reefing of the medial collateral ligament, with resultant loss of 5° of extension and 10° of flexion, and with slight instability of the anterior cruciate and medial collateral ligaments, with moderate weakness of the quadriceps.

"(2) Sympathetic reflex dystrophy, treated by left lumbar sympathectomy, June 12, 1974, with warm, pink foot and dry skin, with the osteoporosis improved.

"(3) A chronic synovitis of the left knee is present, along with a chronic bursitis of the infrapatellar bursa on the left.

"(4) A moderately severe anxiety reaction with depression is deemed present by the Clinical Psychologist.

"b. Diagnoses *not* due to the industrial injury but deemed pertinent:

"(1) Possible hypertensive cardiovascular disease, with blood pressure 150/80, with harsh Grade III/VI systolic-diastolic murmur at the apex, radiating up along the left sternal border, with a history of two mild myocardial infarctions in the past. The heart rate was 104.

"(2) Chondromalacia, patella, bilateral."

In his "comments," Dr. Van Osdel added the following opinion:

"* * * This examiner strongly feels that this patient could have rehabilitated his knee, a long time ago, had he had psychological counseling and therapy concomitant with an attempt to rehabilitate his knee. Although he is a chronic complainer, when he is sitting down there is no apparent evidence of any persistent pain, although he frequently complains of same. In addition, he was advised to see the examiner, at any time that his knee was swollen or there was any abnormal change, but he never came in except to ask for medications. However, he complained quite freely of swelling to the therapists but no measurements were taken. Consequently, the examiner feels that he was trying to impress those about him with the severity of his condition. He apparently does not realize that he has a very active part in getting better."

On September 23, 1974, claimant was seen by George A. Gurski, a rehabilitation counselor with the Division of Vocational Rehabilitation. Mr. Gurski's report of that date indicates that

"* * * Mr. Corley declined to sign an application for services at this time stating that he did not feel physically able to tolerate any type of employment in his current condition. * * *

"Mr. Corley was given the address and the telephone number of our office in Coos Bay and was informed that he should contact that office should he wish to make application for services from the Vocational Rehabilitation Division at a later date."

On October 21, 1974, claimant was seen by Dr. D. W. Rich with regard to possible complications of the knee injury. In his report of November 8, 1974, Dr. Rich mentioned complaints of "chronic recurrent low back pain after sitting or standing for any prolonged time." He added that the back problem was "kept under fair control by means of conservative treatment including a lumbosacral support."

Claimant received a notice of an appointment made for him presumably by Dr. D. S. Wisdom at Portland Pain Clinic but did not keep it, saying that after he received the notice he called Dr. Wisdom's office and was told by a girl in the office that Dr. Wisdom had not made an appointment for him. He did not call the Pain Clinic to verify the appointment.

In November 1974, at the suggestion of two different doctors, according to the testimony of claimant's wife, they moved to Arizona. Subsequently they moved to Palm Springs, California, and except for intermittent trips back to Oregon, remained there until approximately April 1, 1977. While in California, claimant, at the instance of the employer, was referred to Dr. Leonard Kalfuss in Palm Springs for orthopedic evaluation. On September 27, 1976, claimant underwent surgery by Dr. Kalfuss for the removal of a retropatellar fat pad. He was last seen by Dr. Kalfuss on March 17, 1977, at which time Dr. Kalfuss characterized claimant's condition as follows:

"* * * He is able to walk without any cane or crutch for the first time since his injury since 1972. He advised me furthermore that he has some discomfort in his low back when he sits for too long or rides in an automobile. His symptoms in his back have been unchanged throughout this period of time. The patient has some residual difficulty with the left knee. He has advised me the

operation did help him at least 50% and that he does not have the pain where he points to about the patella tendon. He has generalized aching about the anterior aspect of the knee which appears to be behind the patellar itself. He has some soreness and aching when he walks in excess of one block. His right knee pops but it does not cause him any particular pain. Of course he has the same symptoms with his right lower extremity as before my surgery which he believes is related to the nerve operation in his back. Denies any swelling, giving out, buckling, locking or limitation in motion in his left knee.

"* * * * *

"* * * Generally, this patient is no longer using a cane or crutch and I have encouraged him not to do so. * * *."

Dr. Kalfuss was of the opinion that claimant could not return to his former work as a plywood grader, but did indicate that he "should be rehabilitated to some form of gainful employment."

Claimant does not wear a knee brace or an elastic bandage. After sitting for a period of time, claimant's symptoms are relieved if he is able to stand up and move about. He takes Tylenol 3 on an irregular basis, whenever he thinks he may need one.

When last seen by Dr. Kalfuss in Palm Springs on March 17, 1977, there was "minimal tenderness of the lumbo sacral spine," a full range of motion of the lumbo sacral spine "with minimal pain to extremes," "mild to moderate [pain of the left knee], depending upon the degree of stress," and only "minimal" limitation of full range of motion of the left knee.

Claimant has not returned to work, and had not looked for work because, as he expressed it, he has not "felt like it."[1] He has a sixth grade education, has an I.Q. of 81, "thinks he could hold down a full time job

---

[1] According to the record, Mr. and Mrs. Corley's combined income from worker's compensation benefits and social security disability benefits was approximately $1,297 per month.

* * * [as of September 24, 1974] if he was able to get up and move around every thirty minutes or so," has run machinery in a furniture factory, has driven a truck, has run a glue machine, a tape machine and, at the time of his injury in 1972, was a plywood grader, earning, at that time, $3.805 per hour. His claim was closed by Determination Order of May 4, 1977.

Based on our de novo examination of this record we conclude that claimant has not carried his burden of establishing that he is totally disabled and is not employable.

Although the claimant is admittedly disabled from performing heavy physical work, he appears capable of light sedentary-type work. Further, claimant has not shown reasonable and requisite diligence in attempting to locate such employment. He does not wear a knee brace or an elastic bandage. He takes Tylenol 3 on an irregular basis, whenever he thinks he may need one. In 1974 he said that he thought he could hold down a full-time job if he was able to get up and move around every 30 minutes. The record indicates that he had not sought any type of employment since his 1972 injury.

In 1974 he declined to sign an application for vocational rehabilitation. There is no evidence that he has attempted to avail himself of these specialized services for disabled workers except on one occasion when he testified that he stopped by the Vocational Rehabilitation Division's office in Coos Bay and inquired about training.

As noted in *Wilson v. Weyerhaeuser Co.,* 30 Or App 403, 410, 567 P2d 567 (1977), motivation is relevant to the issue of the availability of other employment. Considering claimant's level of motivation, we conclude that he has not established that there is no employment available for a person with his skills, education and physical limitations.

On May 4, 1977, a Determination Order was entered granting claimant temporary total disability and awards of compensation equal to 67.5 degrees for 45 percent loss of use of the left leg, and 20 percent of the maximum allowable for unscheduled permanent partial disability resulting from injury to his low back.

Reevaluating the extent of claimant's disability, we conclude that an award of 75 degrees for 50 percent of loss of use of his left leg and 96 degrees for 30 percent of the maximum allowable for unscheduled permanent partial disability on account of claimant's low back injury is the appropriate award for claimant's disabilities.

Affirmed as modified.