Argued and submitted February 5, reversed and referee's order reinstated
August 3, 1988

In the Matter of the Compensation of
Judy J. Gornick, Claimant.

GORNICK,
*Petitioner,*

*v.*

SAIF CORPORATION et al,
*Respondents.*

(WCB 86-00831; CA A43930)

758 P2d 401

Robert Udziela, Portland, argued the cause for petitioner. With him on the brief were Diana Craine, Portland, and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

Warden, P. J., dissenting.

## VAN HOOMISSEN, J.

Claimant seeks review of an order of the Workers' Compensation Board, which reversed the referee's award of permanent total disability and awarded her 40 percent unscheduled disability. On *de novo* review, *former* ORS 656.298(6),[1] we reinstate the referee's award.

At the time of the hearing, claimant was 43 years old. She attended school for approximately ten years and earned a GED in 1972. She had worked at home most of her life. Between 1960 and 1969, she worked for short periods as a maid, a waitress and a clerk. She worked in a tree nursery from 1978 to March, 1980, when she suffered a compensable injury to her back. In May, 1980, Dr. Ordonez performed a laminectomy and discectomy. In May, 1981, claimant was released for work, with restrictions on lifting, bending and carrying. She returned to work clipping trees. In August, 1981, she fell at work, again injuring her back and causing back pain radiating into her right leg. She returned to Ordonez, who initially found significant functional overlay in her symptoms. However, a CT scan disclosed an extradural defect at L5-S1. At the request of SAIF, she was seen by Orthopaedic Consultants, who found her in pain, with little functional overlay, but with some exaggeration in stating her symptoms. Ordonez referred her to Dr. Brenneke, who found little functional overlay and stated that her pain was probably due to adhesions and compression of the nerve root at the area of her previous surgery. In April, 1982, Brenneke and Ordonez performed decompression and fusion surgery. In February, 1983, a determination order awarded her 40 percent permanent partial disability.

After surgery, claimant tried physical therapy and analgesics but was still in pain. In April, 1983, Brenneke referred her to the Northwest Pain Clinic. The clinic staff found that she was somaticly preoccupied and that her motivation for vocational rehabilitation, therapy and return to work was only fair. Dr. Cramer found that mechanical, as well as non-organic factors, contributed to her pain and recommended sedentary to light work. Dr. Yospe, a psychologist, found that she was somatic, that her motivation to return to

---

[1] The petition for review was filed before July 20, 1987. *See Armstrong v. Asten-Hill,* 90 Or App 200, 203, 752 P2d 312 (1988).

work was difficult to assess and that her motivation for rehabilitation was moderate. By all accounts, she was cooperative and participated well, if somewhat superficially.

After treatment at the pain center, claimant was better able to control her pain. She attempted some country dancing and took a part-time job teaching cake decoration, but she stopped those activities because of increased pain. In December, 1984, she again saw Brenneke. Although he initially recommended reopening her claim for an aggravation, he later stated that he was not necessarily recommending reopening. He noted that she was depressed and that the problem was her "ability to handle her pains." He thought that her condition might improve with treatment by Yospe. A referee set aside SAIF's denial of her aggravation claim.

Yospe saw claimant from February through April, 1985. He found her very depressed and felt that many of her physical symptoms had an emotional etiology. However, her depression improved with treatment. In August, 1985, Yospe found that she was psychologically stationary, although he continued to treat her.

In November, 1985, she was reevaluated by Orthopaedic Consultants, who found her to be medically stationary and suffering functional overlay with moderate loss of function due to her back injury. Dr. Klein, a psychiatrist, found her to be entrenching herself in a disabled role. In December, 1985, Ordonez also noted functional overlay, and Brenneke essentially agreed with those evaluations. In January, 1986, the claim was again closed, with no increase in award. Claimant was referred for vocational rehabilitation.

In February, 1986, claimant sought treatment for worsened pain, as shown by numbness and muscle spasms. The emergency room physician diagnosed post-lumbar disc surgery symptoms, probably hysterical in origin. In March, 1986, Yospe discontinued treatment, because he found that, although she continued to complain of chronic pain, she had not shown a return to depression. He believed that she could maintain herself psychologically.

In May, 1986, Brenneke concluded that claimant was unable to perform any significant work and was totally disabled. He explained that her condition had deteriorated, that

she had continuing and unremitting pain accentuated by everyday activities, that surgery was not feasible, that the pain clinic had not been able to treat her successfully and that Yospe had not been able to help her overcome the mental aspects of her chronic pain.

Claimant sought a redetermination of the extent of her disability. She testified concerning her pain and the restrictions which the pain placed on her activities. She also testified that, although she questioned whether she would be able to perform the work required, she had contacted 21 potential employers without success. The referee expressly found her testimony credible, noting that she was in obvious pain during the hearing. Claimant's rehabilitation counselor testified that she had some transferable skills and that there was a stable market in which she could find employment, although some employments might require site modification, and that pain might interfere with her performance. The referee awarded her permanent total disability. On review, the Board reversed the referee and awarded 40 percent unscheduled disability.

Permanent total disability[2] may result from less than total physical incapacity, when combined with nonmedical conditions, including "age, training, aptitude, adaptability to nonphysical labor, mental capacity, emotional condition, as well as conditions of the labor market." *Wilson v. Weyerhaeuser,* 30 Or App 403, 409, 567 P2d 567 (1977). Permanent total disability may be established by any evidence which demonstrates to the satisfaction of the trier of fact that, as a consequence of a compensable injury, the claimant has been rendered unable to sell her services on a regular basis in a hypothetically normal labor market. *Wilson v. Weyerhaeuser, supra.* Claimant has the burden of proving her permanent total disability status and must establish that she is willing to

---

[2] ORS 656.206(1)(a) defines permanent total disability as

"the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation."

seek regular gainful employment and that she has made reasonable efforts to obtain such employment. ORS 656.206(3).

■     Claimant's objective physical condition alone would limit her to sedentary work. However, claimant also suffers two psychological problems: depression and somatic preoccupation. The depression was profound before treatment by Yospe. His opinion is that she has come out of her severe depression and is stationary in that regard. However, a portion of claimant's physical pain is the result of somatic preoccupation. Somatic behavior is the process of transferring mental anxiety into physical discomfort, rather than dealing consciously with the anguish. *Steadman's Medical Dictionary* at 1476 (21st ed 1981). Before her injury, she had never suffered psychological problems. Medical opinion, except perhaps Dr. Klein's, is that claimant's behavior results from her psychological inability to address consciously the changes in her life brought about by her compensable injury. Hence, the psychological aspect of claimant's condition is compensable.

In the light of the medical evidence and because of claimant's age, physical limitations, lack of education and limited work experience, we conclude that she falls in the odd-lot category of permanent total disability. *See Ferguson v. Industrial Indemnity Co.,* 70 Or App 46, 687 P2d 1130 (1984). Moreover, she has adequately proven her willingness to seek gainful employment. *See* ORS 656.206(3). Her concern about her ability to work is realistic and not evidence of a lack of motivation.

Reversed; referee's order reinstated.

**WARDEN, P. J.,** dissenting.

The majority orders reinstatement of the referee's order, which awarded claimant permanent total disability. The majority concedes that "the medical evidence alone does not show that claimant is totally disabled," yet it concludes that because of her "age, physical limitations, lack of education and limited work experience," and because of her psychological problems which interfere with her ability to deal with her pain, claimant is in the odd-lot category. I disagree and, therefore, dissent.

The referee's own findings do not support the award. At the time of the hearing, claimant was only 43 years old. She was limited in how much she could lift and carry to 20 pounds and restricted in some back movements; however, as the referee noted, Orthopaedic Consultants concluded that she could do light work, and her own treating orthopedic physician concluded that she could do sedentary work. She has had 10 years of formal education and has received a high school general equivalency degree. As the referee found, her work experience includes work as a waitress, a maid in a private home, a cashier and stock clerk, cake decorating and instructing, as well as nursery or farm labor that she was doing when she was injured. As for psychological problems, the referee found: "There are no psychological, or emotional residuals." The referee also observed: "The vocational counsellor was confident she could locate work claimant could do in the light or sedentary areas. She may be right."

Because claimant is still relatively young, is physically limited only in lifting and certain movements of her back, has education equivalent to a high school diploma, has had a variety of work experience and lacks psychological residuals and because the vocational counsellor believed she could find work for claimant that she could do within her limitations, I would not find her to be permanently totally disabled. Because she does not suggest that anything less than an award of permanent total disability would be acceptable to her, I would not consider whether her disability is greater than that already awarded but would affirm the order of the Board. Therefore, I dissent.