Argued and submitted October 21, affirmed December 21, 1994

In the Matter of the Compensation of
Darrel L. Hunt, Claimant.

EBI COMPANIES
and Silver Wheel Freight,
*Petitioners,*

*v.*

Darrel L. HUNT,
*Respondent.*

(91-11602; CA A78147)

887 P2d 372

Thomas M. Sheridan argued the cause for petitioners. On the brief were Michael G. Bostwick and Bostwick, Sheridan & Bronstein.

Glen H. Downs argued the cause for respondent. With him on the brief were Gerald C. Doblie and Doblie & Associates.

Before Rossman, Presiding Judge, and Richardson, Chief Judge, and Leeson, Judge.

LEESON, J.

## LEESON, J.

Employer seeks review of an order of the Workers' Compensation Board that awarded claimant permanent total disability (PTD). We review for errors of law. ORS 656.298(6); ORS 183.482(8). We affirm and write only to address whether the Board erred in considering evidence from a doctor who was not claimant's treating physician.

Claimant suffered a compensable back injury in 1977 while working for employer as a truck driver. He reinjured his back in 1979 and 1980. In 1982, he suffered yet another injury when he was struck by a hit-and-run motorist. Since 1982, he has had seven back and neck surgeries. Claimant's long-term treating physician is Dr. Misko, an Oregon neurosurgeon. After claimant moved to Montana, however, Misko referred claimant to Dr. Gray, a Montana physician, for pain management and evaluation. Claimant was declared medically stationary on August 3, 1990. A determination order issued on January 16, 1991, which awarded temporary disability but stated that claimant was "entitled to no additional compensation for permanent disability." An order on reconsideration issued August 30, 1991, which affirmed the January 16, 1991, determination order. Claimant sought a hearing.

At the hearing, the referee took evidence from Misko, who testified that he believed that claimant was physically capable of performing certain sedentary jobs. The referee also took evidence from Gray, who considered claimant to be permanently and totally disabled. The referee found:

"Claimant's neck is stiff and constantly painful. He [h]as residual headaches, numb hands and arms; focal seizures of the left arm and left buttock and leg pain and numbness. The nerve root at L5-S1 on the left is scarred and swollen from previous surgeries. Claimant does not rest well and the effects of long term weariness and pain are evident on his face. He spends two-thirds of his day in bed or in a recliner. He is limited to standing no more than 3 to 4 minutes in one place. He is limited to sitting no more than one-half an hour. He sits at an angle leaning on his elbow to reduce his left hip pain. He walks only around his house and then only occasionally. He is required to climb 10 to 12 steps to bed. He has fallen while ascending this stairway. Low back bending is extremely painful."

The referee concluded that claimant is permanently and totally disabled, because he is "unable to regularly perform suitable and gainful employment." Permanent total disability is

> "the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation." ORS 656.206(1)(a).[1]

The Board affirmed. It found Misko's opinion inconsistent and unpersuasive and relied on Gray's opinion.[2]

Employer argues that, in determining whether claimant is entitled to PTD, ORS 656.245(3)(b)(B) requires the referee and the Board to consider impairment findings and that only the attending physician may make such findings.[3] ORS 656.245(3)(b)(B) provides:

> "A medical service provider who is not an attending physician cannot authorize the payment of temporary disability compensation. Except as otherwise provided in this chapter, only the attending physician at the time of claim closure may make findings regarding the worker's impairment for the purpose of evaluating the worker's disability."

Claimant argues that, because his claim is for an unscheduled disability, impairment findings are not

---

[1] OAR 436-30-055 provides:

"(1) A worker is permanently and totally disabled if permanently incapacitated from regularly performing work in a suitable and gainful occupation. * * *

"(a) 'Incapacitated' from regularly performing work means that the worker does not have the necessary physical and mental capacity and the work skills to perform work."

Claimant has the burden of proving that he is permanently and totally disabled, that he is willing to seek regular, gainful employment and that he has made reasonable efforts to obtain such employment. OAR 436-30-055(3).

[2] The Board noted that

"the Referee found that the opinion of Dr. Misko * * * was not persuasive because Dr. Misko recognized that claimant needed to be taken 'off medications and to improve his situation so he can become employable,' yet Dr. Misko continued to prescribe such medications and concluded that claimant was not permanently and totally disabled."

[3] OAR 436-35-005(5) defines impairment as

"a decrease in the function of a body part or system as measured by a physician according to the measurement methods described in the American Medical Association Guides to the Evaluation of Permanent Impairment."

required. OAR 436-35-005(8) defines unscheduled disability as

"the permanent loss of earning capacity due to a compensable on the job injury or disease as described in these rules, arising from those losses contemplated by ORS 656.214(5) and not to body parts or functions listed in ORS 656.214-(2)(a) through (4)."[4]

The Board concluded that Gray's opinion considered claimant's "total condition, including the effects of the medications prescribed for the compensable condition," and did not constitute impairment findings as described in ORS 656.245-(3)(b)(B).

■　　Neither the relevant statutory sections nor the relevant regulations require impairment findings as a prerequisite to a finding of PTD for an unscheduled disability. In *Gornick v. SAIF*, 92 Or App 303, 307, 758 P2d 401 (1988), we said that "[p]ermanent total disability may be established by *any evidence* that demonstrates to the satisfaction of the trier of fact that, as a consequence of a compensable injury, the claimant has been rendered unable to sell h[is] services on a regular basis in a hypothetically normal labor market." (Emphasis supplied.)

■　　Here, the referee and the Board rejected the opinion of claimant's attending physician, Misko. Claimant's consulting physician, Gray, and both employer's and claimant's vocational counselors offered evidence that the referee and the Board considered in making their determination that claimant is permanently and totally disabled. That evidence demonstrated to the satisfaction of the Board that "claimant has been rendered unable to sell h[is] services on a regular basis" in the labor market. Because ORS 656.206(1)(a) does

---

[4] ORS 656.214(2)(a) through (4) addresses the degrees assigned for permanent partial disability due to the loss of use or function of a body part such as an arm, leg, foot, hand, hearing or sight. ORS 656.214(5) provides:

"In all cases of injury resulting in permanent partial disability, other than those described in subsections (2) to (4) of this section, the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. Earning capacity is to be calculated using the standards specified in ORS 656.726(3)(f). The number of degrees of disability shall be a maximum of 320 degrees determined by the extent of the disability compared to the worker before such injury and without such disability. For the purpose of this subsection, the value of each degree of disability is $100."

not require the Board to make impairment findings when deciding whether to award PTD for an unscheduled disability, the Board did not err in relying on the opinion of a nonattending physician.

Affirmed.