Argued April 23, affirmed in part, reversed in part
and remanded with directions June 2, 1975

VESTER, *Respondent—Cross-Appellant, v.*
DIAMOND LUMBER COMPANY (No. 16-975),
*Appellant—Cross-Respondent.*
535 P2d 1373

*Ridgway K. Foley, Jr.,* Portland, argued the cause for appellant—cross-respondent. With him on the brief were Souther, Spaulding, Kinsey, Williamson &

Schwabe, James D. Huegli and Roger A. Luedtke, Portland.

*Tom Hanlon,* Springfield, argued the cause for respondent—cross-appellant. With him on the brief were Babcock, Ackerman & Hanlon, Springfield.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

Robert Vester, claimant in this workmen's compensation matter, was awarded by Determination Order of October 31, 1973, permanent partial disability equivalent to 25 per cent of the maximum allowable for unscheduled low back disability, plus five per cent scheduled disability for loss function of his left arm. The referee increased the award so as to allow claimant 40 per cent unscheduled low back disability and 10 per cent disability ratings each for loss function of the left arm and loss function of the left leg. In addition, the referee remanded claimant's claim for compensation for an abdominal aneurysm to the employer with directions that such claim be accepted for payment. Both parties then appealed to the Workmen's Compensation Board. By order of March 12, 1974, the Board denied compensation for the aneurysm, but affirmed the referee's award in all other respects.

Claimant thereupon appealed to the circuit court, which denied him compensation for the aneurysm but decided that he was permanently and totally disabled by virtue of the back injury. On appeal to this court, the employer contends that claimant does not fall within the purview of the odd-lot doctrine and therefore is not entitled to a permanent total disability rating. By way of cross-appeal, claimant argues that he is entitled to compensation for his abdominal aneurysm.

Claimant is a six foot two inch 185 pound man who was 44 years of age at the time of his accident. From the time he quit school in the sixth grade he has engaged in a wide variety of occupations, including sheepherder, flour mill worker, deckhand on a tugboat, the infantry, sawmill worker, logger, city marshal, welder, log truck driver and salesman. In 1966 claimant suffered an injury which led to a laminectomy and a 15 per cent unscheduled disability award. However, claimant's recovery was such that he described his back as being in as good condition as it had been in 1971.

Claimant went to work for Diamond Lumber Company, appellant—cross-respondent herein, in the summer of 1968 as a forklift driver. On July 17, 1971, while clearing a path for his vehicle, he fell backwards over a carrier block and twisted his back. Increasingly severe pain caused him to quit his job three days later.

In August 1971 Dr. Edwin G. Robinson, claimant's treating physician with regard to the back injury, diagnosed his condition as an unstable fifth lumbar vertebra with acute lumbosacral back strain syndrome with left sciatica, and possible reherniation of intervertebral disc between L-5 and S-1 on the left.

Conservative treatment having proved unsuccessful, Dr. Robinson concluded on September 23, 1971, that a myelogram should be performed and that a lumbosacral fusion was necessary The myelogram was negative for a protruded disc. However, X-ray examination revealed a large abdominal aneurysm. This latter finding necessitated a postponement of the back surgery, for without timely correction claimant's life expectancy was only about two years. On October 17, 1971, Dr. William R. Sweetman performed the requisite aneurysmal repair surgery, from which claimant made a successful recovery.

Dr. Robinson made the following observation regarding the relationship between the aneurysm and claimant's back injury:

"* * * The aneurysm is not the responsibility of Liberty Mutual [the insurance carrier for Diamond Lumber Company]. I also want to put it on the record that I do not believe this aneurysm plays any real part in this man's acute episode of back pain that has continued as a result of the injury."

And:

"In my opinion, the aneurysm played no real part in his back episode."

Dr. Sweetman declared that it was not medically probable that the back injury and its effects were a material factor in lighting up or hastening the development of the aneurysm, and felt that it was only medically *possible* (as opposed to probable) that the pain and other effects of the back injury obscured or masked claimant's discovery of the aneurysm, with attendant increased difficulty of earlier medical diagnosis of the aneurysm.

Three months after the aneurysm surgery, Dr. Robinson performed a lumbosacral fusion on claimant.

On September 1, 1972, on Dr. Robinson's approval, claimant began employment as a foreman and welder. However, the job required considerable bending, twisting and lifting, and he was forced to quit because of increased pain in the low back and left leg after about two months.

Dr. Robinson thereupon referred claimant to the Disability Prevention Division for vocational rehabilitation evaluation, commenting that his patient seemed "quite certain" that he could do refrigeration repair work. Psychological evaluation and testing revealed him to be of normal intelligence, with superior under-

standing of mechanical principles and superior gross manual dexterity. His interest in refrigeration repair was considered "realistic," and the general prognosis for rehabilitation was described as good.

Claimant graduated from a refrigeration repair training course in June 1973. He attempted to set up his own repair business but abandoned the effort after two months because he found himself unable to move refrigerators without help, and it was financially unfeasible to hire a helper.

From that time until the time of the hearing in April 1974, claimant's only employment has been as a gas station attendant, which he quit because he was unable to stand on his feet for the required length of time. While he has made inquiries at the employment office and union hall and "called" about a job as a backhoe operator, claimant has not sought employment outside of the town of Tillamook.

At the hearing, claimant described his basic incapacities as heavy lifting and bending. He also complains of a numbness in his left hand, accompanied by occasional cramps which make him drop things. He is able to walk half a mile on a flat surface, do vacuuming, and change the points in a car, and feels that he is capable of working at a bench and doing light welding. He can do refrigeration work in a shop, provided that he does not have to stand or sit for eight hours and has some opportunity to relax. He is even able to push refrigeration equipment on a dolly. His testimony was consistent with the impression of Dr. Norman Hickman, who conducted the earlier psychological evaluation of claimant:

> "* * * The patient feels that he could not possibly work at anything for eight hours if it required a fixed position either standing or sitting. However he does seem to be implying that he could

work if he could have some freedom of movement
* * *."

■ This court recently discussed the so-called "odd-lot" doctrine at some length in *House v. SAIF,* 20 Or App 150, 530 P2d 872 (1975). We said in part:

"* * * This is a rule which permits a finding of total disability in a situation where claimant is not altogether incapacitated for any kind of work, but he is nonetheless so handicapped that he will not be able to obtain regular employment in any well-known branch of the competitive labor market —absent superhuman efforts, sympathetic friends or employers, a business boom, or temporary good luck. 2 Larson, Workmen's Compensation Law § 57.51; *Swanson v. Westport Lumber Co.,* [4 Or App 417, 479 P2d 1005 (1971)]; *Deaton v. SAIF,* 13 Or App 298, 509 P2d 1215 (1973); *Kirkendall v. Stamper's J & J Tire,* [18 Or App 56, 523 P2d 1052, Sup Ct *review denied* (1974)].

"The burden is initially on the employe to prove his odd-lot status. However, once he establishes prima facie that he is an odd-lot case, the burden shifts to the employer to demonstrate that some kind of suitable work is regularly available to claimant. *Deaton v. SAIF,* supra; *Kirkendall v. Stamper's J & J Tire,* supra.

"Depending on the quality of claimant's evidence, proof of his motivation to find suitable work may or may not be required in order to establish the prima facie case. In *Deaton v. SAIF,* supra, we set forth the determinative test as follows:

" '(1) * * * [M]otivation is not necessary to establish a *prima facie* case of odd-lot status if the medical facts when considered along with other factors, such as age, education, mental capacity and training of themselves support the claimed inability to work, and (2) evidence of motivation to seek and work at gainful employment is necessary to establish a *prima facie* case of odd-lot status if the injuries, even though

severe, are not such that the trier of fact can say that regardless of motivation this man is not likely to be able to engage in gainful and suitable employment. The burden of proving odd-lot status rests upon the claimant.' 13 Or App at 304-05." 20 Or App at 157-58.

■■ The evidence, including claimant's own testimony, indicates that he is qualified by intelligence, aptitude and physical capability to perform light work in several fields, including refrigeration repair, welding, and operation of certain power equipment. We thus do not reach the issue of motivation. Having reviewed the entire record, we conclude that the workman has not sustained his burden of establishing that he is within the odd-lot class. We have further concluded, however, that the referee and the Board erred in awarding claimant only 40 per cent disability for his back condition. We are of the opinion that this record, as above set forth, supports the conclusion that he is entitled to an award of 66 2/3 per cent for loss function of his back rather than the 40 per cent awarded by the Board. We agree with the award of 10 per cent for loss function of the left leg and 10 per cent for loss function of the left arm.

■ In his cross-appeal, claimant contends that Diamond Lumber Company is responsible for expenses related to his abdominal aneurysm. He argues that treatment of the aneurysm was not separable from treatment of the back condition (since the aneurysm surgery was given priority), and that therefore the aneurysm treatment was a compensable natural consequence of the back injury.

Such a fragile nexus does not give rise to a compensable claim under our Workmen's Compensation Law. While we have recognized the proposition that a preexisting condition may become compensable where the on-the-job injury produces symptoms which

"mask" manifestations of the earlier condition to the patient's detriment, *Waibel v. State Compensation Dept.*, 3 Or App 38, 471 P2d 826 (1970), such, according to the medical testimony, is clearly not established here. The only evidence of a connection between claimant's industrial accident and the aneurysm, besides the fact that the latter was discovered in the course of treatment for the former, was Dr. Sweetman's opinion that it is medically possible, although not probable, that the pain of the back injury could have "masked" pain from the aneurysm, thereby delaying its diagnosis. Dr. Robinson, the treating physician and the man who performed the back surgery, testified unequivocally that the aneurysm was unrelated to the injury. Thus, there is no medical basis to conclude that the back injury masked the aneurysm in any significant way, if at all.

Affirmed in part, reversed in part and remanded for entry of judgment in accordance herewith.