558 P.2d 923

David M. RAMONETT, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Magma Copper Company, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 1463.

Court of Appeals of Arizona,
Division 1,
Department C.

Filed Nov. 9, 1976.
Rehearing Denied Dec. 17, 1976.
Petition for Review Denied Jan. 11, 1977.

Davis, Eppstein, Tretschok & Ford by Dale D. Tretschok and Bruce L. Dusenberry, Tucson, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent Industrial Commission of Arizona.

Twitty, Sievwright & Mills by John F. Mills, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, Phoenix, State Compensation Fund, for respondent carrier.

## OPINION

HAIRE, Chief Judge.

The issue in this case is whether the petitioner employee's anxiety neurosis is a compensable result of his industrially related injury.

Petitioner, David M. Ramonett, had been employed three months as an electrician's helper underground when he accidentally pricked his finger on some wires, fainted, and went into convulsions. He recovered with seemingly nothing more major than a slightly cut finger and a minor head laceration which he sustained when he fell, but because of the fainting and convulsions he embarked on a series of medical tests. It was feared he might have epilepsy. The tests eventually led to a diagnosis of "vasovagal bradycardia", a condition which would cause slowing of petitioner's heartbeat, fainting, and seizures, if he sustained even a minor injury. The exact medical etiology of vasovagal bradycardia is unknown; painful physical or mental stimuli seem to bring on the attacks. There is no contention that the condition itself is in any way work related.

Petitioner was dismissed by his employer because his tendency to faint made him dangerous to himself and his co-workers in his type of employment.

The discovery that he had this physical condition, coupled with the dismissal from employment and its resulting financial problems, led to a loss of self-esteem and the development of an anxiety neurosis, which petitioner claims is compensable as a result of the industrial injury. To support this contention petitioner constructs a caus-al chain: if not for the accident, however minor, he would not have fainted; had he not fainted, his underlying condition of vasovagal bradycardia would not have been discovered; had the underlying condition not been discovered, he would not have been dismissed from employment and so not suffered financial problems; without the anxiety and loss of self-esteem evoked by his physical, employment, and financial problems petitioner would not have developed his disabling anxiety neurosis.

To support this causal chain petitioner relies on testimony by a neurologist, Dr. Masland, who felt that the industrial episode was "contributory" to the anxiety, and a psychiatrist, Dr. Schorsch, who testified that the industrial episode was "a precipitant or stimulus to his loss of self-esteem and his following anxiety."

The hearing officer, however, denied compensation because he found that the only function played by the industrial episode was to focus attention on the petitioner's physical condition. The hearing officer therefore found that the compensable effects of the industrial accident were limited to the minor finger and head injuries.

█ If the industrial episode, however minor, is in any meaningful way a contributing cause of the petitioner's mental condition, then treatment for this mental condition should be covered under workmen's compensation. It is well established in the law that the industrial accident does not have to be the sole cause of an injurious result, it is sufficient if it can be shown to be "a producing cause". *Nelson v. Industrial Commission,* 24 Ariz.App. 94, at 96, 536 P.2d 215 at 217 (1975). Petitioner's predisposition toward his mental condition also would not defeat his claim; the employer "takes his employees as he finds them", *Tatman v. Provincial Homes,* 94 Ariz. 165, 382 P.2d 573 (1963), in mental as well as physical condition. Arizona has allowed recovery for mental disability if it is caused, precipitated, or aggravated by an industrial incident. *Tatman v. Provincial Homes, supra,* (fall from 15 foot scaffold, precipitat-

ing preexisting mental instability); *Murray v. Industrial Commission,* 87 Ariz. 190, 349 P.2d 627 (1960) (hysteria following back injury); *Brock v. Industrial Commission,* 15 Ariz.App. 95, 486 P.2d 207 (1971), (preexisting depressive anxiety and manic-depression aggravated by incident in which truck driver caused death of pedestrian). However, the industrial incident must in some way "produce" the injurious result. As stated in *Murray, supra* :

> "The injury need not be the sole cause of disability, if it is a *producing* cause." (Emphasis added). 87 Ariz. at 199, 349 P.2d at 633

> *    *    *    *    *    *

> "In legal contemplation, if an injury, operating on an existing bodily condition or pre-disposition, *produces* a further injurious result, that result is caused by the injury." (Emphasis added). 87 Ariz. at 199, 349 P.2d at 633

There is no contention in this case that petitioner's industrial accident had any aggravating effect on his underlying vasovagal bradycardia, nor that the accident itself caused his unemployment. The only role played by the accident was to focus attention—to initiate the investigation which eventually diagnosed the problem.

There was undisputed testimony that, while the precise stimuli, physical or mental, which will start a vasovagal bradycardia attack are unknown, petitioner had suffered similar attacks before the industrial episode and continued to experience similar fainting problems "every week" after the episode. The stimulating events seem to be so minor that it is not probable that petitioner's condition would have remained forever undiscovered absent this particular industrial accident. But, even if this accident were only "the straw that broke the camel's back", see *Tatman, supra,* 94 Ariz. at 169, 382 P.2d at 576, and the break otherwise probably inevitable, petitioner should recover if it could be shown that his mental condition were in any way a result or product of the accident. When the medical tes-

timony is closely examined, however, this is not the effect or meaning of all that was said. On close analysis of all of the psychiatrist's testimony, it is apparent that Dr. Schorsch stated, not that petitioner's reaction to the injury was troubling him, but rather that he was troubled by what this reaction revealed about his body.

"Q. [By Mr. Tretschok] Doctor, based on the history that you took, your examination of Mr. Ramonett, your subsequent follow-up, and using your medical expertise, can you tell me whether or not Mr. Ramonett's diagnosis of acute situational reaction manifested by anxiety was precipitated or caused to any degree by his industrial episode of September 19, 1974?

"A. Yes, I can answer that question.

It was my impression at the time that loss of self-esteem based on Mr. Ramonett's value system, that being one, the importance he saw himself as being working, as well as his concern with his body image, seeing himself as being a strong young growing male, that the accident at work was a precipitant or stimulus to his loss of self-esteem and his following anxiety. I add that my impression that in my opinion this is based on his previous history and previous experience insofar as in his relationship with his father and the values that he placed on this.

"Q. Doctor—

"A. In other words, he had a predisposed personality to such a situation. It certainly was the precipitant."

It should also be noted that, in the list of factors Dr. Schorsch gave as causing the anxiety, by far the most prominent was the loss of employment and the effect this had on petitioner's self-image.

"Mr. Ramonett reported to me that he had been doing work for approximately three months. I believe he has been doing well. He had been experiencing a considerable amount of gratification from his success at work as far as the duties he performed, which had been reported to him had been done well, as well as the

elevation of his own self-esteem as seeing himself acquiring reasonable financial payment for his work. He was feeling good about working and being responsible. And he also reported to me that he had concerns about his father who it is my understanding was ill and that he was sustaining his father economically to some extent which was quite important to him."

The neurologist Dr. Masland's testimony was similar to Dr. Schorsch's in that he stated that what was troubling petitioner related more to his unemployment and resulting financial worries than to the discovery in and of itself:

"A. Well, I would certainly concur with what I said and what I had in mind was that Mr. Ramonett was in a situation where there was a self-filling aspect at his mental condition. He was very nervous and anxious, he was unemployed, bills were piling up and the more the bills piled up the more anxious he got and the less able he was to get around to employment, and it was that cycle that I was using and considering as something potentially a long term and not certainly to his best interests."

■ Later, Dr. Masland stated that the anxiety was not primarily related to the bradycardia:

"In other words, his anxiety is something which is not related to the bradycardia?

"A. Not primarily. I think the fact that he had bradycardia and went unconscious started this whole train of events over, but I don't think the bradycardia in and of itself is the primary contributing factor. It is a contributing factor because it started the whole thing off."

Arizona law is well established that:

". . . in order for a disease to be compensable as arising out of and in the course of employment, there must be a causal connection with the employment, and not a mere coincidental connection . . . ." *Crawford v. Industrial Com-*

*mission,* 23 Ariz.App. 578, 583, 534 P.2d 1077, 1082 (1975).

The conditions of employment must present a special exposure to the hazard, in excess of that to which everyone is commonly exposed. *Treadway v. Industrial Commission,* 69 Ariz. 301, at 308, 213 P.2d 373, at 377 (1950).

The evidence demonstrates that the types of stimuli which activate petitioner's vasovagal bradycardia response were common and ordinary occurrences, so that his exposure at work was no greater than it would be elsewhere. The relationship which petitioner's mental illness bears to the industrial episode seems to be the type of mere coincidental connection found insufficient in *Crawford, supra. See also, Valerio v. Industrial Commission,* 85 Ariz. 189, 334 P.2d 768 (1959).

■ There is no contention here that either the underlying condition or the dismissal from work because of it were in any way produced by the accident, except insofar as the accident revealed that Mr. Ramonett had this condition. It is our opinion that where the only role the industrial episode has played is to precipitate an investigation, the employer should not be liable for the results of what the investigation reveals, nor for the employee's emotional response to the revelation.

On this basis, the award of the Industrial Commission is affirmed.

FROEB, P. J., and JACOBSON, J., concur.