616 P.2d 100

**ALLSTATE INSURANCE COMPANY and Miramonte Properties, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Carl Moser, Respondent Employee.**

**No. 1 CA–IC 2294.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 28, 1980.

Jones, Teilborg, Sanders, Haga & Parks, P. C. by J. Russell Skelton, Phoenix, for petitioners.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Rabinovitz & Dix, P. C. by Bernard I. Rabinovitz, Tucson, for respondent employee.

## OPINION

OGG, Chief Judge.

This Special Action–Industrial Commission challenges the hearing officer's determination that medical problems encountered by respondent employee when he entered the hospital to undergo a diagnostic myelogram and subsequent surgery are the industrial responsibility of petitioner carrier and employer. We find that the hearing officer's conclusion is reasonably supported by the evidence and affirm the award.

After a back injury on August 4, 1974, respondent employee Carl Moser's workmen's compensation claim was accepted for benefits.

On July 19, 1978, on recommendation of the treating physician and with the approval of the carrier, respondent–employee was hospitalized at the Tucson Medical Center for a myelogram and possible laminectomy. Certain tests were ordered pursuant to the hospital admission, including a urinalysis and an electrocardiogram (EKG).

The EKG performed on July 19, 1978, the day of admission, revealed atrial fibrillation and other positive findings. Moser's urinalysis was also abnormal in that the protein level was increased and there were both red and white blood cells present.

As a result of the abnormal EKG and urinalysis, Robert P. Goldfarb, M.D., a neurosurgeon and the admitting physician, scheduled a consultation for Moser with William B. Carrell, M.D., an internist, for the purpose of defining and controlling the medical problems prior to undergoing the myelogram or surgery.

The problem of atrial fibrillation was first treated with digitalis preparation of quinidine which resulted in atrial fibrillation flutter. Thereafter, Moser's heart was returned to a normal sinus rhythm by Lee Schocket, M.D., a cardiologist, who prescribed and performed electrocardioversion on July 29.

Because of the initial urinalysis abnormal findings, a repeat urinalysis was performed which again demonstrated abnormal findings. As a result, an intravenous pyelo-gram (IVP) was performed and approximately six days following this test, Moser experienced a renal shutdown. Richard M. Thompson, M.D., the attending urologist, testified that the subsequent renal shutdown was most probably caused by the IVP.

Moser was also treated for other medical problems but on review, the carrier argues that the significant medical expense at issue is related to the extensive treatment and time delay caused by the abnormal heartbeat and urological problems. The myelogram and lumbar surgery were eventually performed. Allstate does not now contend that it is not responsible for any and all lumbar surgery and post–surgical care.

On review, the carrier argues that the pre–myelogram procedures undertaken first, to return the employee's heart to a normal sinus rhythm, and second, to treat respondent's renal shutdown, should not be considered an industrial responsibility. The carrier argues that these conditions were significant independent conditions which would have required treatment regardless of the claimant's hospitalization for diagnostic procedures and possible surgery. The hospitalization, the carrier also contends, merely provided the setting for the discovery of these underlying conditions.

The carrier's contention is based upon *Ramonett v. Industrial Commission*, 27 Ariz.App. 728, 558 P.2d 923 (1976), where this Court held that when the only role an industrial episode played was to precipitate an investigation which revealed an underlying illness, the employer was not liable for the result of what the investigation revealed, nor for the employee's emotional response to the revelation.

The circumstances in the case before us differ from those presented in *Ramonett*. Here, there is no contention that the petitioner employer and carrier should be liable for any underlying heart or kidney condition from which the claimant may suffer. Rather, the appellee contended that he was entitled to medical benefits for the preop-

erative procedures in the hospital which became necessary because of the impending surgery for the industrial injury.

It is generally accepted that where an industrial injury results in surgery which aggravates a preexisting condition or causes further complications, the entire result is an industrial responsibility. *See, e. g., Bisonic v. Halsey Packard, Inc.,* 62 N.J.Super. 365, 163 A.2d 194 (1960), (industrial accident and resultant operative procedure contributed to aggravation of preexistiog latent coronary disease); *Hurchick v. Falls Township Board of Supervisors,* 203 Pa.Super. 1, 198 A.2d 356 (1964), (aggravation of spinal cyst precipitated by exploratory myelogram); *Stites v. Rex Bar,* 202 Pa.Super. 587, 198 A.2d 615 (1964), (surgical intervention for laceration of fourth and fifth fingers of right hand caused damage to subclavian and innominate arteries of claimant's right arm); *Spear v. Brockway Motor Company,* 9 A.D.2d 799, 192 N.Y.S.2d 766 (1959), (hernia operation aggravated decedent's heart condition and contributed to death); *Elmore's Variety Store v. White,* 553 S.W.2d 350 (Tenn.1977),(subarachnoid hemorrhage of underlying aneurysm caused by treatment for ankle injury).

The question then is whether this reasoning should apply to *pre–surgery* treatment necessary to place the injured employee in a condition to undergo surgery related to an industrial injury. In reviewing the evidence, which we view in a light most favorable to sustaining the award, *Ortega v. Industrial Commission,* 121 Ariz. 554, 592 P.2d 388 (App.1979), we find that the reasonable inferences from the evidence support the hearing officer's conclusion that the medical intervention occasioned at the time for the atrial fibrillation and the renal shutdown were related to the procedures undertaken in preparation for the industrially related myelogram and lumbar surgery, and these preexisting conditions would not have required treatment "but for" the impending surgery. We affirm the award.

Respondent employee has requested this court to impose sanctions against the petitioners under the provisions of Rule 25, Arizona Rules of Civil Appellate Procedure. We have found this to be a difficult case under the facts, therefore we cannot classify this appeal as spurious or frivolous, which would justify the imposition of sanctions. Respondent employee's request for sanctions is denied.

JACOBSON, P. J., and DONOFRIO, J., concur.