722 P.2d 962

**Francis K. LAVELLO and Frances Lavello, his wife, Plaintiffs-Appellees,**

v.

**Ralph V. WILSON, M.D.; and Jane Doe Wilson, his wife, John Does I–V, Defendants-Appellants.**

**No. 1 CA–CIV 7386.**

Court of Appeals of Arizona, Division 1, Department A.

June 25, 1985.

Reconsideration Denied April 28, 1986.

Review Denied July 15, 1986.

Robert Stephan, Jr., Phoenix, for plaintiffs-appellees.

Teilborg, Sanders, Haga & Parks by Stephen Paul Forrest and Brian R. Burt, Phoenix, for defendants-appellants.

## OPINION

GREER, Judge.

This is an appeal from a judgment for the plaintiffs in an action for medical malpractice. We reverse and remand for entry of judgment for defendants-appellants Ralph V. Wilson, M.D. *et ux.*

On April 4, 1978, appellee Francis Lavello (Lavello), then employed as a truck driver for A.M. Lewis Company, sustained an injury to his right knee arising out of and in the course of his employment. He went to a hospital emergency room, and then to the company physician, who referred him to orthopedic surgeon Dr. Eugene Chandler. Dr. Chandler first saw Lavello in May of 1978, and approximately three

weeks later ordered an arthrogram, which he concluded revealed a horizontal cleavage tear of the medial meniscus of the right knee. Dr. Chandler recommended surgical removal of the torn meniscus.

Lavello thereafter requested that he be seen by a physician closer to his home, and his industrial carrier referred him to appellant Dr. Ralph Wilson (Dr. Wilson) on June 12, 1978. Dr. Wilson treated Lavello for a period of time, and in November of 1978 performed an arthroscopy. Although he had been prepared to remove the meniscus at that time, he did not do so.

At the request of the industrial carrier, Lavello was examined by Dr. Hubbard on March 7, 1979. Dr. Hubbard found Lavello's condition stationary, and sent him back to work with a 5% disability. Dr. Wilson agreed with Dr. Hubbard's opinion, and last saw Lavello on March 21, 1979. Lavello continued to suffer pain. On August 27, 1979 he saw Dr. Feingold, who recommended a repeat arthrogram. Dr. Cary Stegman performed an arthrogram on October 3, 1979, which revealed a complex tear in the medial meniscus. Dr. Marion Peterson eventually removed the torn meniscus in May of 1980. Lavello's industrial claim was closed with an award of 20% disability in the left leg in September of 1981. Evidence adduced at trial tended to show that Dr. Wilson's failure to remove the torn meniscus in late 1978 caused a significant worsening in the condition of Lavello's knee.

Lavello never obtained a claim reassignment from his employer's industrial carrier. He filed the instant lawsuit on March 4, 1981, almost two years after he last saw Dr. Wilson. Dr. Wilson's answer alleged, *inter alia*, that Lavello lacked a cause of action in his own right and that the court therefore lacked personal and subject matter jurisdiction. Dr. Wilson later moved for summary judgment arguing that Lavello's action was barred by the one-year limitation period established by A.R.S. § 23–

1023(B). The trial court denied the motion, finding that the defense asserted by Dr. Wilson under A.R.S. § 23–1023 was unavailable to him. Dr. Wilson challenged that ruling by special action to the Arizona Supreme Court, No. 16274–SA (November 5, 1982), but that court declined to accept jurisdiction.[1]

The case was tried to a jury in June, 1983. A verdict was returned in favor of appellee in the amount of $432,500. Appellant filed a motion for new trial, which was denied. Timely appeal followed.

■ Dr. Wilson has raised ten issues on appeal. We need address only one: whether Lavello's action was barred by A.R.S. § 23–1023(B). We hold that it was.

The statute provides as follows:

A. If an employee entitled to compensation under this chapter is injured or killed by the negligence or wrong of another not in the same employ, such injured employee, or in event of death his dependents, may pursue his remedy against such other person.

B. If the employee entitled to compensation under this chapter, or his dependents, does not pursue his or their remedy against such other person by instituting an action within one year after the cause of action accrues, the claim against such other person shall be deemed assigned to the insurance carrier, or to the person liable for the payment thereof. Such a claim so assigned may be prosecuted or compromised by the insurance carrier or the person liable for the payment thereof, or may be reassigned in its entirety to the employee or his dependents. After the reassignment, the employee entitled to compensation, or his dependents, shall have the same rights to pursue the claim as if it had been filed within the first year.

C. If he proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as

---

1. If the court 'declines to accept jurisdiction,' its ruling is not considered to be a decision on the merits and does not become the law of the case.

See *McRae v. Forren*, 5 Ariz.App. 465, 428 P.2d 129 (1967); *Morgan v. Continental Mortgage Investors*, 16 Ariz.App. 86, 491 P.2d 475 (1971).

provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectable from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. This lien shall not be subject to a collection fee. The amount actually collectable shall be the total recovery less the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery. The insurance carrier or person shall contribute only the deficiency between the amount actually collected and the compensation and medical, surgical and hospital benefits provided or estimated by the provisions of this chapter for such case. Compromise of any claim by the employee or his dependents at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of the compensation fund, or of the person liable to pay the claim.

A.R.S. § 23–1023.

The precise question before us is whether an action for negligent aggravation of an industrial injury through medical malpractice constitutes a third-party action subject to A.R.S. § 23–1023(B). If it does, then Lavello's failure to commence the action within a year after his claim against Dr. Wilson accrued, or to obtain a reassignment of that claim from his employer's insurance carrier after the first year expired, requires entry of judgment for Dr. Wilson. *Stephens v. Textron, Inc.,* 127 Ariz. 227, 619 P.2d 736 (1980); *K.W. Dart Truck Co. v. Noble,* 116 Ariz. 9, 567 P.2d 325 (1977); *Canez v. Polanco,* 120 Ariz. 128, 584 P.2d 592 (App.1978).

This is a case of first impression in Arizona. Issues concerning the application of A.R.S. § 23–1023(B) ordinarily arise in situations where the negligent third party is alleged to have been the sole cause of the industrial injury from which the third party action arises. *See, e.g., Stephens v. Textron, Inc., supra* (employee's widow sued the operators of a helicopter in which the

employee was killed in the course of his employment). Our supreme court has made it clear, however, that A.R.S. § 23–1023 may also apply where the negligent third party, while not the initial cause of the industrial injury, is alleged to have exacerbated it in treating it medically. In *Liberty Mutual Insurance Co. v. Western Casualty and Surety Co.,* 111 Ariz. 259, 527 P.2d 1091 (1974), the plaintiffs sustained certain minor injuries when plaster dust blew into their eyes on the job. They were thereafter treated for their injuries by the defendant physicians, who left toxic materials in their eyes and thereby caused extensive damage to their vision. At issue before the supreme court was whether the industrial carrier was entitled to a lien pursuant to A.R.S. § 23–1023(C) on the entire proceeds of a settlement of the third party action against the physicians. In the course of its analysis, the court noted:

We observe that it is now uniformly held that aggravation of the primary injury by medical and surgical treatment is compensable under Workmen's Compensation Acts. 1 Larson's Workmen's Compensation Law, § 1321, and *see, e.g., Heaton v. Kerlan,* 27 Cal.2d 716, 166 P.2d 857 (1946) and *Matter of Parchefsky v. Kroll Brothers, Inc.,* 267 N.Y. 410, 196 N.E. 308 (1935). In *Heaton v. Kerlan,* the court said, quoting from an earlier California case, that:

\* \* \* the employee is entitled to recover under the schedule of compensation for the extent of his disability, based on the ultimate result of the accident, regardless of the fact that the disability has been aggravated and increased by the intervening negligence or carelessness of the employer's selected physician.

111 Ariz. at 263, 527 P.2d 1091 (citations omitted).

*Talley v. Industrial Commission,* 137 Ariz. 343, 670 P.2d 741 (App.1983) completes the analysis. In *Talley,* the petitioner slipped at work and hurt his back while carrying a heavy wooden beam. The following day, he reinjured his back in a mi-

nor automobile accident unconnected with his work. He filed an industrial claim and sued the driver of the other vehicle. His attorney later settled the suit against the other driver without first obtaining the approval of the workmen's compensation carrier. Citing the unauthorized settlement and A.R.S. § 23–1023(C), the carrier refused to pay workmen's compensation benefits, and the Industrial Commission sustained that position. This court disagreed. We held that A.R.S. § 23–1023(C) did not apply to settlement of claims that were totally independent of the industrial accident, and thus the carrier's approval of the automobile accident settlement was not required. We indicated in *Talley* that the carrier's reliance on *Liberty Mutual* was misplaced because, unlike the automobile accident in *Talley*, "a malpractice action stemming from allegedly negligent treatment of an industrial injury is not a separate, nonindustrial action." 137 Ariz. at 347, 670 P.2d 741. We further noted that the negligent treatment of an ·industrial injury entitles the employee to workmen's compensation benefits for the consequential damages arising therefrom.

*Liberty Mutual* and *Talley* make it quite clear that under Arizona law, a medical malpractice action arising out of the treatment of an industrial injury is not regarded as separate and independent from the industrial injury itself. In effect, such a claim, though dependent upon facts different from those which gave rise to the original industrial injury, is nevertheless treated as an outgrowth or expansion of the industrial injury claim, and retains its relation to the employment in question. Consistent with that view, a worker suffering increased disability arising from the negligent medical aggravation of an industrial injury is fully eligible for worker's compensation benefits. *See AllState Insurance Co. v. Industrial Commission*, 126 Ariz. 425, 616 P.2d 100 (App.1980); *Liberty Mutual, supra.* Further, unlike a claim for aggravation of an industrial injury by means of a separate, nonindustrial event, *see Talley v. Industrial Commission, supra,* the industrial carrier acquires A.R.S.

§ 23–1023(C) lien rights on the entire "amount actually collectable" in an action for negligent medical aggravation of an industrial injury. *Liberty Mutual, supra.* We therefore find inescapable the conclusion that such an action is fully within the intendment of A.R.S. § 23–1023, and that the provisions of A.R.S. § 23–1023(B) are applicable thereto.

■ Lavello nevertheless argues, relying upon A.R.S. § 23–1021 and certain language in *Talley*, that A.R.S. § 23–1023 cannot apply because a medical malpractice action for negligent care of a work-related injury is not an "accident arising out of or in the course of [the] employment." Contrary to Lavello's argument, however, the applicability of § 23–1023 depends by its terms not on the nature of the injury-producing event, but rather upon the employee's entitlement to compensation. As we have indicated *supra*, it is well settled that the consequences of negligent medical aggravation of an industrial injury are fully compensable under our Worker's Compensation Act. The prerequisite for application of A.R.S. § 23–1023 is thus established. As for Lavello's reliance upon *Talley*, he refers us to the following language:

> A clear reading of § 23–1023 demonstrates that a carrier's subsection C subrogation right and concomitant right to approve claim settlements are limited to and based upon the rights of "an employee entitled to compensation under this chapter" in accordance with subsection A. *"An employee entitled to compensation" is one who is injured in the course and scope of his employment. A.R.S. § 23–1021. We find the plain import of § 23–1023 is to allow carrier subrogation and settlement approval rights in the limited circumstance where a third-party tortfeasor injures an employee in the course and scope of his employment.*

137 Ariz. at 346, 670 P.2d 741 (emphasis added). Contrary to appellee's contention, the highlighted language was intended solely to emphasize the inapplicability of

A.R.S. § 23–1023 to third party torts that were entirely unrelated to the employment in connection with which workmen's compensation was provided. The question of the applicability of the statute to a claim for exacerbation of an industrial injury through negligent medical treatment was not before us.

Lavello also argues that lien rights pursuant to A.R.S. § 23–1023(C) are distinguishable from an automatic assignment of a third party claim under A.R.S. § 23–1023(B). He attempts to distinguish *Liberty Mutual, supra,* on that ground, asserting "[t]he industrial insurance company may have a lien for benefits it has paid, but cannot and should not have a right to sue the malpractice physician to whom it had sent the injured employee." We cannot agree. Lavello has offered no conceptual basis for distinguishing between the lien rights established by subsection (C) and the assignment (subrogation) rights established by subsection (B). Indeed, *Olivas v. United States,* 506 F.2d 1158 (9th Cir.1974), cited by Lavello on a different issue, cuts squarely against that position. In that case a U.S. government contractor's worker's compensation policy expressly waived any subrogation rights the carrier might acquire against the government by reason of any compensation payments made. The court held this contractual waiver applied both to the carrier's subrogation rights under A.R.S. § 23–1023(B) and to its lien rights under A.R.S. § 23–1023(C). The court stated:

> The Arizona courts have refused to draw such a distinction between "lien" and "subrogation" interests. "Lien rights" under Ariz.Rev.Stat. § 23–1023's predecessors have been treated as if they were subrogation rights. *State Industrial Commission v. Pressley,* 74 Ariz. 412, 250 P.2d 992, 996–997 (1952); *Hornback v. Industrial Commission,* 106 Ariz. 216, 474 P.2d 807, 810–811 (1970).
>
> \*　　\*　　\*　　\*　　\*　　\*

Moreover, under the same practical reading which the Arizona courts have accorded to prior versions of § 23–1023,

it is clear that the lien interest created under paragraph (C) is merely an alternative to the assignment of rights under paragraph (B). The provisions are designed to insure that an employee will not receive a double recovery and that the insurance carrier will be reimbursed by the third-party tortfeasor for compensation actually paid.

506 F.2d 1158, 1165.

*German v. Chemray, Inc.,* 564 P.2d 636 (Okla.1977), relied on by Lavello, also does not support his position. At issue in that case was not the application of a special statute of limitations for third-party actions, but rather whether a physician who negligently aggravated an industrial injury was entitled to share in the statutory immunity conferred on the employer. Further, *Mock v. Santa Monica Hospital,* 187 Cal.App.2d 57, 9 Cal.Rptr. 555 (1960), cited by Lavello, is not inconsistent with our holding. Like the court in *Mock,* we do not hold that the compensability of a new injury resulting from the treatment of an industrial injury precludes an action against the physician in question for malpractice. Our holding concerns only the conditions under which such an action may be brought. *Fletcher v. Harafajee,* 100 Mich. App. 440, 299 N.W.2d 53 (1980), is also inapposite. That case concerned the Michigan statutory conditions under which co-employee immunity was applicable, and has nothing whatever to contribute to the resolution of the issue in this case.

■ Finally, Lavello argues that Fremont Indemnity, the industrial carrier, waived "any potential interest in Francis Lavello's claim by lien or assignment...." In support of this argument, Lavello relies on a letter from his counsel to the claims manager for Fremont Indemnity, dated February 26, 1981, confirming that Lavello's counsel had been advised that "any malpractice claim that Mr. Lavello has you do not consider subject to the statutory assignment for any interest that Fremont Indemnity might have." Appellees further rely on deposition testimony by Fremont Indemnity's claims supervisor to the effect

that she was in a position to know of any claim by Fremont Indemnity upon Lavello's third-party action against Dr. Wilson, but had no knowledge of any such lien claim. We cannot agree that the requirement of A.R.S. § 23–1023(B) for a "reassignment" of the third-party claim is thereby met. The most that can be concluded from the letter and testimony is that the industrial carrier was laboring under the mistaken apprehension that Lavello's claim against Dr. Wilson had not been automatically assigned to it by operation of A.R.S. § 23–1023(B). What was required, however, was an express reassignment from the carrier to Lavello before the expiration of the statute of limitations. *Compare Stephens v. Textron, Inc.*, 127 Ariz. 227, 619 P.2d 736 (1980) *with Stirewalt v. PPG Industries, Inc.*, 138 Ariz. 257, 674 P.2d 320 (App. 1983). It is undisputed that no such reassignment ever occurred.

The case is reversed and remanded with directions to enter judgment for appellants.

BROOKS, P.J., and JACOBSON, C.J., concur.