807 P.2d 926 (1991)
STATE of Wyoming ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellant (Objector-Defendant),
v.
Lorance L. GIRARDOT, Appellee (Employee-Claimant).
No. 90-55.
Supreme Court of Wyoming.
March 14, 1991.
Joseph B. Meyer, Atty. Gen. and Ron Arnold, Sr. Asst. Atty. Gen., for appellant.
Clay B. Jenkins, Sheridan, for appellee.
Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.
URBIGKIT, Chief Justice.
Appellee Lorance I. Girardot, age sixty-two, had an unknown and potentially life threatening coronary artery condition initially discovered when he was examined for surgery for a work related hernia. Expensive coronary artery surgery was first performed before the medical attention to the hernia could reasonably be given. These facts frame this appeal and its issue addressing the state worker's compensation fund obligation for treatment for a major preexistent physical condition in order to treat the relatively minor work related injury.
The Wyoming Workers' Compensation Division's administrative hearing officer denied the coronary by-pass surgery expenses. The district court, on judicial review, reversed and we reverse the district court to reinstate the benefit denial. The appeal presents no factual dispute. The decision is resolved by examination of the statutes and application of common law precedent.
On September 4, 1987, Girardot slipped on a wet floor while working as a janitor. From the fall, he sustained a compensable hernia injury. On September 10, 1987, he went to The Billings Clinic, Billings, Montana, for corrective surgery. While he was undergoing preoperative examination, his cardiogram appeared abnormal and, following an angiography, it was discovered he suffered from a severe arterial blockage of the heart, near critical in nature, requiring by-pass surgery before the hernia operation could be safely pursued. Without any contact made to the Workers' Compensation Division by either the medics or Girardot, the by-pass surgery was performed and then followed in due time by the corrective hernia operation.
The medical expense claim for the by-pass surgery totalled approximately $35,000, while the hernia operation cost approximately $3,790. Temporary total disability claims were made and paid until recovery *927 from the hernia surgery was complete. Both the employer and the Workers' Compensation Division objected to the payment of the heart surgery cost.[1] The issue is compensability of the cost of the medical care for the unrelated by-pass heart surgery untreated and unknown until after the occurrence of the work related injury. We directly consider statutory application to medical benefit payment where major medical care is required before treatment of the work related injury can be safely performed.
The Workers' Compensation Division cites two statutes in support of benefit denial, W.S. XX-XX-XXX(a)(xi)(F) and XX-XX-XXX(a). W.S. XX-XX-XXX states in pertinent part:
(a) As used in this act:
* * * * * *
(xi) * * * "Injury" does not include:
* * * * * *
(F) Any injury or condition preexisting at the time of employment with the employer against whom a claim is made.
W.S. XX-XX-XXX(a) reads in part:
Any tests to be administered or other services proposed to be rendered by a health care provider which are clearly not germane to the injury shall be disclosed to the injured employee, if possible, and the employee shall be advised that the cost of the tests or services will be the responsibility of the employee if he consents to the tests or services.
Girardot takes comfort from entitlement by advancing W.S. XX-XX-XXX(a), which states, in part, that "[t]he expense of medical and hospital care of an injured employee shall be paid from the date of the compensable injury * * *."
Our decision is determined by statutory interpretation and judicial application. Girardot directs us to the preoperative treatment rule of Arizona for persuasive authority differing from states with statutory language which would be dispositive. Crow v. Guy Scoggins General Oilfield Contracting Co., 248 Miss. 1, 158 So.2d 1 (1963). See also 2 Larson's Workmen's Compensation Law § 61.13(e) (1989).
Consideration starts with the provisions of W.S. XX-XX-XXX(a)(xi)(F) endorsed by the Workers' Compensation Division. Analysis of its provisions does not answer the present question since there is no doubt about injury in this case. The issue is statutory responsibility for extended scope of treatment. We have a similar problem with the germaneness test of the second cited statute, W.S. XX-XX-XXX(a). In the real world, it was germane to his survival that the major problem first be addressed before the hernia surgery was attempted. Additionally, the record is settled that the treating doctors would not take the risk even if the patient might have been willing to gamble his extended expectancy by first having the minor surgery.
The statute identified by Girardot, W.S. XX-XX-XXX, provides no further preclusive legislative direction. Its reference to medical and hospital care clearly involves the hernia correction, which was the work related injury, and does not assist us in adding or rejecting heart surgery as an insured right of the employee. This is particularly true where clearly, under our case law, the heart condition, in itself, would not have been an insured injury or a compensable condition without meeting other supplementary requirements to make the heart problem into a "work related injury." Matter of Desotell, 767 P.2d 998 (Wyo. 1989); Bridge v. Eisenman Transport, Inc., 742 P.2d 768 (Wyo. 1987); State, ex rel. Wyoming Worker's Compensation Div. v. Van Buskirk, 721 P.2d 570 (Wyo. 1986); Naunes v. State ex rel. Wyoming Worker's Compensation Div., 694 P.2d 86 (Wyo. 1985).
Lacking any determinative statute, Girardot directs us to cases creating or following *928 a principle developed in Arizona cases. The three cases characterized to be "exactly on point" outline what can be described as the Arizona rule. We do not find that principle to be so far reaching as contended and will determine this case without necessarily rejecting some consideration within the included medical attention criteria for compensability addressed in those cases. We do, however, distinguish those cases factually and leave for the legislature in future enactments to provide for an extension of the benefits for this character of additional medical care for the worker if that should be its choice. We decline to provide that result here by adjudicatory legislation. Brown v. State ex rel. Morgan, 79 Wyo. 355, 334 P.2d 502 (1959).
The lead case cited by Girardot was Allstate Ins. Co. v. Industrial Commission, 126 Ariz. 425, 616 P.2d 100 (1980), where other medical problems were encountered by the employee when he entered the hospital to undergo a diagnostic myelogram and subsequent back surgery. In preparing for testing and surgery, atrial fibrillation and renal shutdown were encountered. Stabilization of both conditions was obtained and a lumbar surgery was satisfactorily performed. In that case, the court distinguished the earlier case of Ramonett v. Industrial Commission, 27 Ariz. App. 728, 558 P.2d 923 (1976), where other medical condition treatment benefits had been denied, and observed:
The circumstances in the case before us differ from those presented in Ramonett. Here, there is no contention that the petitioner employer and carrier should be liable for any underlying heart or kidney condition from which the claimant may suffer. Rather, the appellee contended that he was entitled to medical benefits for the preoperative procedures in the hospital which became necessary because of the impending surgery for the industrial injury.
Allstate Ins. Co., 616 P.2d at 101-02. The hearing officer's approval of payment was consequently affirmed.
Factually, Allstate Ins. Co. does not extend beyond procedures required for stabilization of the heart beat and correction of the renal shutdown in order that the basic injury might be treated. Underlying medical conditions as permanent care were not considered or approved for benefit payment. The case itself rested on the reasonable inference due for appellate review of the hearing officer's decision which justified affirming the award previously given.
Allstate Ins. Co. was followed in Arizona by Arrowhead Press, Inc. v. Industrial Com'n of Arizona, 134 Ariz. 21, 653 P.2d 371 (1982), where the payment for prescription drugs was contested. The claimant was involved in an automobile accident with resulting impact injuries requiring knee surgery. The hearing officer again granted benefits for treatment of a bronchial condition preparatory to the use of an anesthesia for the knee operation. The court found "there was sufficient evidence to support the administrative law judge's finding that the hospital treatment of the bronchitis was reasonably necessary and was incurred to place claimant in a condition to undergo surgery for her industrial injury." Id. 653 P.2d at 373. The court further recognized in regard to Allstate Ins. Co. and its concept:
We note that the limits of this principle have not been defined, but petitioners do not here contend that the treatment for claimant's bronchitis during the hospital stay was in any way unreasonable or that it was disproportionate to the magnitude of claimant's industrial condition. In reviewing this question, we must view the evidence in a light most favorable to sustaining the award, and the findings will be upheld if reasonably supported by the evidence.
Id. at 373. On these facts, the relationship of the usage of prescription drugs to stabilize bronchitis in order to administer an anesthesia defines the limitation to which the principle was extended from Allstate Ins. Co. to Arrowhead Press, Inc.
The third case cited by Girardot is, Williams v. Gates, McDonald & Co., 300 Or. 278, 709 P.2d 712 (1985). After sustaining a work related injury, the worker underwent a C5-6 spinal fusion. The neurosurgeon, *929 in preoperative examination, found a carotid artery defect. It was his medical opinion that it would be necessary to retract, or move, the artery in the course of the spinal fusion surgery. The surgeon performed a preparatory right carotid endarterectomy in September which was followed with the spinal fusion in October. As a result of the arterial endarterectomy, the claimant contended she suffered brain damage from either a mild stroke or reduced oxygen during surgery.
The implicit findings which obviously followed from her general contentions were that the endarterectomy was necessary to permit the fusion and the permanent mental condition was the result of the preparatory surgery. The court found the unsuccessful results of that first endarterectomy procedure became compensable as resulting from "total medical treatment. Treatment was necessitated by the injury." Id. at 714. Compare, however, Vester v. Diamond Lumber Co., 21 Or. App. 587, 535 P.2d 1373 (1975), noncompensable pre-existing aneurism; and Matter of Compensation of Brooks, 55 Or. App. 688, 639 P.2d 700 (1982), pre-existing knee condition; neither of which were cited by the Oregon Supreme Court in Williams. Permanent disability consequently resulting from the unfortunate effects of ancillary treatment is not an issue presented here. Treatment complications for work related injuries present an entirely different subject from a preexisting medical problem which may create complications in any general medical care for the patient. See 1 Larson's Workmen's Compensation Law, supra at § 13.21(a).[2]
There is a case of converse persuasion specifically addressing unrelated ailment medical treatment, Quality Wood Products Corp. v. Industrial Com'n, 97 Ill.2d 417, 73 Ill.Dec. 571, 454 N.E.2d 668 (1983). A factual recitation first stated:
[I]n addition to medical attention for his lumbar fracture, which alone would have required only a week-long stay in the hospital, claimant was treated for an intestinal blockage known as a paralytic ileus, pulmonary emboli, acute bronchitis superimposed on emphysema, ischemic heart disease and congestive heart failure. The testimony of both doctors indicates that claimant received psychiatric care. Dr. McKechnie testified that claimant's ileus condition was probably caused by the lumbar fracture and that the symptoms caused by the ileus could have contributed to his mental confusion. Dr. McKechnie further stated that the treatment for claimant's ischemic heart disease, congestive heart failure, bronchitis and emphysema was not connected with the lumbar fracture. Dr. Tuli testified in a similar vein, noting that the lumbar fracture, by creating the need for bedrest, could have indirectly caused the pulmonary emboli, and that the emboli or the heart disease could have indirectly caused claimant's hallucinations by lowering the oxygen level in his blood. Other than the fracture, the bronchitis and the emboli, however, claimant's infirmities were characterized by Dr. Tuli as chronic and neither caused nor aggravated by the lumbar fracture.
Id. 73 Ill.Dec. at 574, 454 N.E.2d at 671. That court then determined:
As earlier noted, claimants bear the burden of proving by a preponderance of the evidence all elements necessary to sustain an award of compensation. * * * [R]espondents may only be ordered to pay for treatment which is "reasonably required to cure or relieve from the effects of the accidental injury." [Illinois statute] * * * In view of the undisputed testimony indicating that claimant received treatment for ailments unrelated *930 to his first lumbar fracture, the cost of which was apparently included in the unitemized bill, respondent's objection thereto should have been sustained. Since the Commission's finding that respondent should pay the entire cost of claimant's treatment is thus contrary to the manifest weight of the evidence, and there is in this record nothing enabling us to separate the eligible from the ineligible expenses, the cause must be remanded for the purpose of determining the extent to which the hospital charges represent expenses for which respondent is chargeable.
Id. 73 Ill.Dec. at 574, 454 N.E.2d at 671. The award of non-itemized medical expense billing was remanded for recomputation to delete expenses for treatment of ailments unrelated to his lumbar fracture. See likewise Vester, 535 P.2d 1373.
We would discern that in the absence of specific statutory direction, a rule of reason can be applied permitting inclusion of incidental or ancillary treatment procedures appropriate or necessary for proper attention to the work related occurrence as required or suggested by the medical practitioner, but not to include a more severe condition which predates the injury. The latter condition is found in the facts of this case. We are also realistically directed to this decision to avoid creating an impenetrable cost exposure barrier to employment of people with known handicaps which may in fact be only achieved age.
Compensability will not be extended from work related injuries to also include major medical care for non-job incurred, preexisting physical problems. In the absence of a countervailing statute, we follow W.S. XX-XX-XXX(a)(xi)(F) for principal injury treatment which was preexisting and not work related. The administrative rule of the Workers' Compensation Division is properly directed and also appropriately confined:
Employees receiving injuries compensable under the Act shall be provided reasonable and appropriate health care benefits as a result of such injuries.
Wyoming Workers' Compensation Rules, Regulations and Fee Schedule, ch. IV, § 1(a)(i). See Yeik v. Department of Revenue and Taxation, 595 P.2d 965 (Wyo. 1979).
There is no general Wyoming case law on this subject and, generally, these problems seem removed from mainstream litigation. The accidental occurrence injury of In re Scrogham, 52 Wyo. 232, 73 P.2d 300 (1937) cited by Girardot does not extend to the other illness situation presented here. Following the thesis of W.S. XX-XX-XXX(a)(xi)(F), a rule of reasonableness for fund obligation in case of a non-work related physical ailment should be applied. This court declines to reverse the decision of the hearing officer and extend medical care for treatment of this preexisting heart condition. The worker's compensation law should be liberally construed  but not extended beyond legislative authorization provided in the statutory language. Matter of Johner, 643 P.2d 932 (Wyo. 1982); Vester, 535 P.2d 1373.
We reverse the district court and remand for restoration of the decision of the Workers' Compensation Division's administrative hearing officer.
THOMAS, J., filed a specially concurring opinion, with whom GOLDEN, J., joined.
CARDINE, J., filed a dissenting opinion.
THOMAS, Justice, concurring specially, with whom GOLDEN, Justice, joins.
I agree that the decision of the district court must be reversed in this case, and the case must be remanded for entry of an order reinstating the decision of the hearing examiner. I would premise that result upon the language of our statute, however, without reference to, or discussion of, precedent from foreign jurisdictions.
Section 27-14-102(a)(xi), W.S. 1977 (June 1987 Repl.), defines injury for purposes of the statute in this way:
"(xi) `Injury' means any harmful change in the human organism other than normal aging and includes damage to or loss *931 of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business." (Emphasis added.)
Read in its entirety, the majority opinion simply holds that the arterial blockage and its complications did not constitute an injury under the statute even though discovered in connection with the examination for treatment of the hernia that admittedly was an injury within the statutory definition. The evidence in the record clearly establishes that, in the opinion of the treating physician, the coronary condition had no relationship whatsoever to Lorance L. Girardot's employment.
We must afford a reasonably liberal interpretation to the Wyoming Worker's Compensation Act in order to accomplish the legislative goals, among which is the intent of the legislature that industry, and not the injured employee, should bear the burden of accident and injury occurring within the industrial setting. Seckman v. Wyo-Ben, Inc., 783 P.2d 161 (Wyo. 1989). See State, ex rel. Wyoming Worker's Compensation Division v. Mahoney, 798 P.2d 836 (Wyo. 1990); Matter of Patch, 798 P.2d 839 (Wyo. 1990). That rule of liberal construction, however, does not justify extending the beneficent purpose of the law to injuries that do not reasonably fall within the language of the statute. Deloges v. State ex rel. Worker's Compensation Division, 750 P.2d 1329 (Wyo. 1988). Girardot's coronary problems do not reasonably fall within the language of the statute, and he is not entitled to recover those expenses attributable to the treatment of that condition.
I add, however, that I can find no justification for reliance by the hearing examiner upon the exclusion set forth in § 27-14-102(a)(xi)(F), W.S. 1977 (June 1987 Repl.), relating to "any injury or condition preexisting at the time of employment with the employer * * *." The hearing examiner made no finding as to when Girardot went to work for the employer nor when the coronary condition came into existence. It may be a fair inference from evidence in the record that it was a preexisting condition. The finding of fact to that effect was not made, however, and the hearing examiner's findings of fact fail to support the conclusion of law that the statutory exclusion is applicable. See FMC v. Lane, 773 P.2d 163 (Wyo. 1989); Larsen v. Oil & Gas Conservation Commission, 569 P.2d 87 (Wyo. 1977); Geraud v. Schrader, 531 P.2d 872 (Wyo. 1975), cert. denied sub nom. Wind River Indian Education Association, Inc. v. Ward, 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975).
CARDINE, Justice, dissenting.
I would affirm the decision of the trial court. It is undisputed that appellee suffered a compensable injury, i.e., the hernia. The hernia could not be repaired without treatment of a preexisting condition, severe blockage of the coronary arteries. Appellee had an absolute right to have the hernia repaired. If it could only be repaired subsequent to treatment for a preexisting condition, then he was entitled to that treatment as the trial court found.
The case is unusual and certainly expensive to the Worker's Compensation fund in this instance. However, these facts alone are not a basis for denying payment of this claim for medical treatment.
Parenthetically, I note that the opinion of the court suggests a "rule of reason" be applied to determine whether this type medical expense is covered by Worker's Compensation. The suggested rule is that if the expense is small, pay it. If the expense is great, as in this case, refuse payment. An interesting rule, but surely not a rule of law.
NOTES
[1] Originally, the Workers' Compensation Division objected to compensability of the hernia condition and any disability payment as well. The employer did not object to the hernia surgery or disability, and settlement was made favoring the employee before the hearing was completed and the only contested issue presented was the medical expenses involved in the heart surgery.
[2] We do not find weight loss treatment-back injury cases cited by Girardot to provide persuasive authority for a heart condition-hernia operation situation. Braewood Convalescent Hosp. v. W.C.A.B., 34 Cal.3d 159, 193 Cal. Rptr. 157, 666 P.2d 14 (1983); Van Blokland v. Oregon Health Sciences University, 87 Or. App. 694, 743 P.2d 1136 (1987). Normally disciplined selfcare is both preferable and cheaper than introduction of the surgeon's knife for body invasion. Contra Clark v. Interstate Homes, Inc., 604 P.2d 937 (Utah 1979) and Insurance Management Corp. of Tidewater/Baldwin Brothers & Taylor v. Daniels, 222 Va. 434, 281 S.E.2d 847 (1981).